ASPENWOOD APARTMENT
CORP., Appellant,

v.

COINMACH, INC., f/k/a Solon
Automated Services, Inc.,
Appellee.

No. 01–08–00636–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 10, 2011.

---

622

Alan Brandt Daughtry, Jackson Walker L.L.P., Jack Z. Yetiv, Houston, TX, for Appellant.

Daniel W. Davis, Robert M. Roach Jr., Roach & Newton, L.L.P., Daryl W. Bailey, Looper, Reed & McGraw, P.C., Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION ON REHEARING

EVELYN V. KEYES, Justice.

Appellee, Coinmach, Inc. f/k/a Solon Automated Services, Inc. ("Coinmach"), filed a motion for rehearing of our August 19, 2010 opinion. We grant rehearing and withdraw our August 19, 2010 opinion and judgment and issue this opinion and judgment in their place. The disposition of the case remains unchanged.

Appellant, Aspenwood Apartment Corporation ("Aspenwood"), appeals the trial court's rendition of a take nothing judgment against it based on Coinmach's motions for summary judgment. In eight issues, Aspenwood argues that the trial court erred (1) in dismissing Aspenwood's claims for breach of contract; (2) in dismissing Aspenwood's trespass and trespass to try title claims; (3) in dismissing Aspenwood's tortious interference claim based on Coinmach's status as a tenant at sufferance; (4) in holding Aspenwood's trespass to try title claims moot after Coinmach vacated the premises; (5) in dismissing Aspenwood's tortious interference claims based on the statute of limitations; (6) in dismissing Aspenwood's DTPA claims on the ground that Aspenwood was not a consumer; (7) in finding that Aspenwood was not a prevailing party on Coinmach's counterclaims; and (8) in dismissing Aspenwood's Declaratory Judgment Act claim as invalid.

We affirm in part and reverse and remand in part.

## BACKGROUND

Coinmach leases laundry rooms in apartment complexes in which it installs coin-operated laundry equipment, services the equipment, and collects revenues generated from the laundry machines. In 1980, Coinmach, then doing business under the name Solon Automated Services, Inc., contracted with Garden View Apartments to provide laundry services to an apartment complex on Pech Road in Harris County, Texas.

The lease provided that the apartment complex leased to Coinmach "the laundry room(s) on the premises described above commencing on date of lease and ending ten (10) years after laundry equipment installation is completed." Coinmach was entitled to "the right of exclusive installation and operation of the Equipment on the above described premises," for which it agreed to pay a certain percentage of the gross receipts to the apartment complex owner "as the total rental due hereunder, within thirty (30) days of the date of collection." The lease also provided that Coinmach "shall own and maintain the Equipment that it installs, without expense to" the apartment complex. The lease also contained the following provisions:

7. This Lease shall be binding on the parties hereto, their heirs, executors, successors, assigns and personal representatives.

8. In the event [Coinmach's] equipment maintenance becomes unsatisfactory and is not corrected within fifteen (15) days after [the apartment complex] notifies [Coinmach] in writing, by certified or registered mail, this Lease become null and void.

9. This Lease shall be subordinate to any mortgage or deed of trust on the premises.

. . . .

11. [The owner] shall inform all subsequent owners of the property of the rights of [Coinmach] under this lease.

12. In the event any action is instituted to enforce any provision of this Lease, the prevailing party shall be entitled to reasonable attorney fees, court costs and expenses.

In 1989, Coinmach and the apartment complex executed an addendum to the lease that extended the expiration date of the lease to July 12, 1999, and modified the percentage of the monies collected that would be paid to the apartment complex as rent.

In January 1994, the apartment complex was sold at a foreclosure sale to Curtis Mosely, the original financer of the property, who immediately deeded the property to Properties on Pech Road ("PPR"), a corporation owned by Mosely and run by Mosely's business associate, David Cragg. In April 1994, Aspenwood bought the apartment complex from PPR. At the time Aspenwood purchased the property, Coinmach was operating in only one of the two laundry rooms at the complex. On April 6, 1994, Aspenwood gave Coinmach written notice to vacate the laundry room, stating that Aspenwood believed that the foreclosure had terminated the lease and that it was unhappy with condition of the laundry rooms operated by Coinmach. Coinmach, however, believed that its lease was still valid and insisted on remaining on the property and continuing to operate its machines. In May 1994, Aspenwood removed Coinmach's equipment from the laundry rooms and began to remodel one of the laundry rooms. In response, Coinmach sought and obtained a writ of re-entry from the justice court in June 1994.

In 1996, Aspenwood filed a forcible entry and detainer action against Coinmach and sent Coinmach another notice to vacate by certified mail. Aspenwood eventually succeeded in its forcible entry and detainer action in the justice court, but Coinmach appealed the ruling to the county court at law and got it overturned by order issued on June 26, 1998. This cause was further appealed to this Court, which determined that it did not have jurisdiction to consider the action because it did not relate to property used for residential purposes only. *See Aspenwood Apt. Corp. v. Solon Automated Servs., Inc.,* No. 01–98–00516–CV, 1999 WL 1063435 (Tex.App.-Houston [1st Dist.] Nov. 24, 1999, no pet.) (not designated for publication); *see also* Tex. Prop.Code Ann. § 24.007 (Vernon 2000) (providing that final judgment of county court in eviction suit may not be appealed on issue of possession unless premises are used for residential purposes only).

Coinmach remained on the property for several more years. During this time, Aspenwood sent further notices to vacate and complained to Coinmach on several occasions regarding the condition of the laundry rooms, failure to pay rent, and failure to provide an accounting for its receipts from the laundry room. Aspenwood maintains that it never cashed any checks it received from Coinmach.

On March 30, 1998, Aspenwood initiated the instant suit. It filed a petition in the trial court seeking a declaratory judgment that Coinmach "has no rights to possession" and that it "does not have a leasehold interest in the property," and alleging causes of action for trespass to try title, breach of contract and attorney's fees, various violations of the Texas Deceptive

Trades Practices Act (DTPA),[1] statutory fraud in a real estate transaction,[2] common law fraud, and tortious interference with prospective contractual relationships. Coinmach counterclaimed, asking the trial court to declare that it was entitled to possession as lessee of the property and arguing that Aspenwood's lawsuit was brought in bad faith and for purposes of harassment in violation of chapters 9 and 10 of the Civil Practice and Remedies Code and that it was entitled to recover attorney's fees, and alleging counterclaims for breach of contract, breach of warranty of possession and quiet enjoyment, breach of warranty of fitness for a particular purpose, breach of warranty of suitability, tortious interference, specific performance, and defamation.

While the suit was still pending in the trial court, the 1999 termination date designated in the lease agreement passed, and Coinmach refused to vacate the laundry rooms, arguing that the lease had been renewed. Aspenwood had a different laundry service take over operation of a second laundry room that had been previously abandoned by Coinmach. Coinmach obtained a second writ of reentry, forcing the competing laundry room operator to cease operations and leave the facility.

Subsequently, the trial court made a ruling that Coinmach's lease had terminated when the property was foreclosed in 1994.[3] The case went to trial in May 2000, and a jury found approximately $1.5 million in damages in favor of Aspenwood. The trial court subsequently rendered judgment on the jury's verdict, and Coinmach vacated the property.

Coinmach filed a motion for new trial, which the trial court granted.[4] In the second trial, Aspenwood again asserted claims for common law trespass, trespass to try title, DTPA violations, tortious interference with a prospective contract, declaratory judgment, and breach of contract.

On May 4, 2007, Aspenwood filed a motion for partial summary judgment seeking to establish Coinmach's tenancy status. Specifically, Aspenwood asked the trial court to determine whether, "On April 6, 1994, when Aspenwood took over the property, was there a holdover month-to-month tenancy with [Coinmach] under which Aspenwood could declare a breach and sue for damages and legal fees?" Aspenwood argued that the original lease was terminated by foreclosure and that, because there was no communication between Coinmach and PPR, the post-foreclosure owner, negating a continued relationship, a month-to-month tenancy arose between the parties that was governed by the same material terms as the original lease. Aspenwood's motion was supported by evidence, including the testimony of Coinmach employee David Siegel that Coinmach was not advised of the foreclosure in January 1994 and that it was not advised that its lease had been terminated by the foreclosure. Siegel also testified that Coinmach continued to operate the laundry rooms and send checks to the apartment complex office, which were cashed. Siegel was not able to testify as

---

1. *See* Tex. Bus. & Com.Code Ann. §§ 17.01–17.926 (Vernon 2002 & Supp.2009).

2. *See* Tex. Bus. & Com.Code Ann. § 27.01 (Vernon 2009).

3. This ruling does not appear in the appellate record. Both parties' briefs acknowledge that such a ruling was made by the trial court.

4. Again, the motion for new trial and the trial court's order granting the motion do not appear in the appellate record. Both parties acknowledge that the motion and ruling were made, and the docket sheet reflects that the trial court granted a motion for new trial on September 25, 2000 and reinstated the case.

to who cashed the checks. Aspenwood also attached copies of the original lease and of the cancelled checks, which were endorsed by "Pech Road Investments, DBA Gardenview Apartments."[5]

On May 7, 2007, Coinmach filed its own motion for partial summary judgment seeking to establish that it was a tenant at sufferance of PPR after the foreclosure terminated its original lease. It argued, "The undisputed evidence shows that Mosley and PPR were totally unaware of Coinmach's existence and possession of the [p]remises; therefore, they could not have consented to Coinmach remaining in possession of the [p]remises." Coinmach argued that because the original lease was terminated by the January 1994 foreclosure and the undisputed evidence demonstrated an "absence of agreement" and an "absence of consent by Mosely, PPR, and [Aspenwood], . . . there is no genuine issue of material fact that Coinmach was anything more than a tenant at sufferance." Coinmach's motion was accompanied by testimony of both Mosely and Cragg that they had no knowledge of Coinmach's existence or presence on the property, that they had absolutely no contact or communications with Coinmach, and that neither Mosley nor PPR ever received or cashed any checks from Coinmach.

On May 29, 2007, the trial court signed an order ruling that the 1994 foreclosure terminated Coinmach's lease as a matter of law, and it ruled that Coinmach was a tenant at sufferance as a matter of law. The trial court also denied Aspenwood leave to file its breach of lease claim in its amended petition, and it ordered that "all claims by [Aspenwood] for breach of lease in any amended pleading are struck."

Coinmach then filed a series of motions addressing the remainder of Aspenwood's claims. Coinmach filed a Rule 166 motion seeking a ruling that a tenant at sufferance cannot be a trespasser as a matter of law. It also filed a traditional motion for summary judgment on Aspenwood's trespass to try title claim, arguing that the claim was moot and procedurally improper, and a no-evidence motion for summary judgment, arguing that Aspenwood could present no evidence that it was a consumer under the DTPA. Coinmach filed a traditional motion for summary judgment on Aspenwood's tortious interference with prospective contract claim asserting that because it was a tenant at sufferance its conduct could not have been tortious. Finally, Coinmach filed a Rule 166 motion seeking a ruling that Aspenwood's declaratory judgment claims were barred as procedurally improper.

On June 11, 2008, the trial court signed an order granting Coinmach's no-evidence motion for summary judgment as to Aspenwood's consumer status in its DTPA claims. Also on June 11, 2008, the trial court issued an order stating:

1) After hearing additional argument from counsel for both parties, the Court hereby clarifies its previous "tenant-at-sufferance" order entered on May 29, 2007, by finding that Coinmach Corporation had a possessory interest and right in the laundry rooms at the Aspenwood Apartments, from the date of the foreclosure in Jan., 1994, until Coinmach vacated the property in May, 2000.

. . . .

3) Given [this] clarification . . ., the legal effect of the Court's May 29, 2007 ruling

---

5. The company "Pech Road Investments" is not clearly identified in the record. Based on some passing comments in deposition testimony of Curtis Mosley and Jack Yetiv, Pech Road Investments appears to have been the owner of Gardenview Apartments before it was sold in foreclosure to Curtis Mosely and PPR.

is to preclude [Aspenwood's] remaining causes of action as a matter of law.

. . . .

5) Pursuant to the Court's May 29, 2007 Order, Coinmach had a possessory interest and right in the laundry rooms at the Aspenwood Apartments at all times relevant to this lawsuit (i.e., April 6, 1994 until Coinmach vacated in May, 2000), therefore Aspenwood shall take nothing by way of its common law trespass and trespass-to-try-title claims. Additionally, trespass to try title was mooted in May, 2000 because Coinmach left the property, never to return.

6) Another legal effect of this Court's May 29, 2007 Order is that Coinmach cannot have tortiously interfered with [Aspenwood's] prospective contractual relations because it was exercising its own lawful rights of possession and that there is no independent tort which is a required predicate to such claim; further, the tortious interference with prospective contractual relations is barred by the statute of limitations. Accordingly, [Aspenwood] takes nothing by way of its tortious interference with prospective contractual relations claim.

7) In addition, . . . the Court also clarifies that Aspenwood is not entitled to any relief on its Declaratory Judgment Act claim.

8) Moreover, . . . the Court denies Aspenwood's claim for legal fees [as the prevailing party on Coinmach's third amended counterclaim].

The trial court signed its final judgment that Aspenwood take nothing, and this appeal followed.

## ANALYSIS

### A. Summary Judgment Standard of Review

We review a trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). When a party moves for both a traditional and a no-evidence summary judgment, we first review the trial court's summary judgment under the no-evidence standard of Texas Rule of Civil Procedure 166a(i). *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004). If the no-evidence summary judgment was properly granted, we do not reach arguments under the traditional motion for summary judgment. *Id.*

To prevail on a no-evidence motion for summary judgment, the movant must establish that there is no evidence to support an essential element of the non-movant's claim. TEX.R. CIV. P. 166a(i); *see Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex. App.-Houston [1st Dist.] 1999, no pet.). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006). "The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements." *Flameout Design & Fabrication,* 994 S.W.2d at 834.

To prevail on a traditional summary judgment motion, the movant has the burden of proving that it is entitled to judgment as a matter of law and that there are no genuine issues of material fact. TEX.R. CIV. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). When, as here, the trial court's summary judgment order does not state the basis for the trial court's decision, we must uphold the order if any of the theories advanced in the motion is meritorious. *Knott,* 128 S.W.3d at 216.

## B. May 29, 2007 Order Finding that Coinmach was a Tenant at Sufferance and Striking Aspenwood's Breach of Lease Claims

In part of its first issue, Aspenwood argues that the trial court erred in granting summary judgment on Aspenwood's breach of lease claims because a holdover tenant is subject to liability if it breaches the terms of the lease under which it holds over.

■■■ When a landlord-mortgagor is foreclosed upon, the general rule is that a tenant's lease is terminated. *ICM Mortgage Corp. v. Jacob*, 902 S.W.2d 527, 530 (Tex.App.-El Paso 1994, writ denied); *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 108 (Tex. App.-Houston [14th Dist.] 1996, no writ). A tenant who continues to occupy the premises after expiration of a lease is a holdover tenant. *Gym–N–I Playgrounds, Inc. v. Snider*, 220 S.W.3d 905, 908 (Tex. 2007).

■■■ We look at the lease itself to determine whether the terms of the lease continue in the event of a holdover tenancy. *Bockelmann v. Marynick*, 788 S.W.2d 569, 571–72 (Tex.1990). Absent evidence to the contrary, a holdover tenant is presumed to be bound by covenants that were binding on him during the term of the lease. *Barragan v. Munoz*, 525 S.W.2d 559, 561 (Tex.Civ.App.-El Paso 1975, no writ). Even when the lease does not contain a holdover provision, if the tenant remains in possession and rent continues to be accepted by the landlord, the terms of the expired lease are presumed to continue unless there is an agreement to the contrary. *Id.* at 562; *see also Carrasco v. Stewart*, 224 S.W.3d 363, 368 (Tex.App.-El Paso 2006, no pet.).

■■■ The tenant and a foreclosure-sale purchaser may also independently enter into a new landlord-tenant relationship, but both parties must manifest consent to enter into a new lease. *ICM Mortgage*, 902 S.W.2d at 532–33; *see also Twelve Oaks Tower*, 938 S.W.2d at 109–10 ("[T]he fact that a foreclosure sale terminates a lease does not erect a legal barrier to the formation of an independent landlord-tenant relationship between the tenant and the foreclosure sale purchaser."). Thus, "we must look at the post-foreclosure conduct of the parties to determine whether a new lease, with terms supplied by the previous one, was created by implication." *Twelve Oaks Tower*, 938 S.W.2d at 110 (citing *ICM Mortgage*, 902 S.W.2d at 533). "The fact that the parties are held to the terms of the previous lease does not alter this conclusion," because "[i]t is merely the origin of the new contractual relationship that is independent of the prior lease, not the substance of the relationship." *Twelve Oaks Tower*, 938 S.W.2d at 110. "This allows for the reasonable inference that because a contractual agreement is implied between the parties, it is prudent to look at an existing instrument to which at least one party had previously assented to establish the terms of the implied agreement." *Id.* However, continuation in possession, without more, does not establish an agreement to pay rent pursuant to the lease. *ICM Mortgage*, 902 S.W.2d at 532.

■■■ When no new lease is formed and a tenant continues in possession of land covered by a prior lease but omitted from a succeeding lease, that tenant is either a tenant at sufferance or a tenant at will. *See Mount Calvary Missionary Baptist Church v. Morse St. Baptist Church*, No. 2–04–147–CV, 2005 WL 1654752, at *6 (Tex.App.-Fort Worth July 14, 2005, no pet.) (mem.op.) (quoting 49 TEX. JUR.3D *Landlord and Tenant* § 13 (2003)).

A tenant at will is one who is in lawful possession of premises by permission of the owner or landlord for no fixed term. *ICM Mortgage*, 902 S.W.2d at 530 (citing *Robb v. San Antonio St. Ry.*, 82 Tex. 392, 18 S.W. 707, 708 (1891)). A tenant at will has no certain or sure estate, and the lessor may put him out at any time. *Id.* "A tenant at will, in contrast to a tenant at sufferance, possesses the property with the owner's consent." *Id.*

"Tenancy at sufferance is created and exists where a person who has entered as a tenant for a term holds over after the expiration of the term" or when a person holds over after a judgment has divested him or her of title to real property. *Mount Calvary Missionary Baptist Church*, 2005 WL 1654752, at *6 (quoting 49 TEX. JUR.3D *Landlord and Tenant* § 13 (2003)). Usually, a tenancy at sufferance arises when a tenant holds over past the end of his tenancy. *McLain v. Lamb*, No. 07–95–0251–CV, 1996 WL 721954, at *5 n. 6 (Tex.App.-Amarillo Dec. 16, 1996, writ denied) (not designated for publication). "A tenant who remains in possession of the premises after termination of the lease occupies 'wrongfully' and is said to have a tenancy at sufferance." *Bockelmann*, 788 S.W.2d at 571; *Carrasco*, 224 S.W.3d at 368.

Tenancy at sufferance is a lesser possessory estate than tenancy at will. *ICM Mortgage*, 902 S.W.2d at 530. "A tenant at sufferance is merely an occupant in naked possession of property after his or her right to possession has ceased[,] ... does not assert a claim to superior title, is not in privity with the owner, and possesses no interest capable of assignment." *Mount Calvary Missionary Baptist Church*, 2005 WL 1654752, at *7 (quoting 49 TEX. JUR.3D *Landlord and Tenant* § 13 (2003)); *ICM Mortgage*, 902 S.W.2d at 530 (holding that tenant at sufferance

"is one who wrongfully continues in possession of property after his right to possession has ceased and does not assert a claim to superior title") (citing RESTATEMENT (FIRST) OF PROPERTY § 22 (1936)). Tenants at sufferance constitute "a class of possessors who are not tenants but who may be turned into tenants at the election of the owner." *McLain*, 1996 WL 721954, at *5 (quoting 2 R. Powell & P. Rohan, *Powell on Real Property* § 16.06[2] (1996)). A "tenant at sufferance falls short of being a trespasser only by virtue of having initially been in possession rightfully." *Id.* He may thus be treated by the landlord either as a trespasser or as a periodic tenant retroactively to the beginning of the relationship. *Id.*

"Under the common law holdover rule, a landlord may elect to treat a tenant holding over as either a trespasser or as a tenant holding under the terms of the original lease." *Bockelmann*, 788 S.W.2d at 571; *Carrasco*, 224 S.W.3d at 368. Either way, tenants at sufferance are "impliedly liable to their landlord for the 'use and occupation' or the 'fair rental value of the property.'" *McLain*, 1996 WL 721954, at *5 (quoting RESTATEMENT (SECOND) OF PROPERTY § 14.5 cmt. a (1977) (stating that "it is only fair and reasonable to impose upon the tenant an obligation to pay the landlord ... for the value of his continued use and occupation of the leased property") and 1 AMERICAN LAW OF PROPERTY § 3.36 (1952)). Whether a holdover tenant is a trespasser or a periodic tenant is often dictated by the landlord's conduct. *McLain*, 1996 WL 721954, at *5 n. 7. The landlord's either demanding rent or accepting it constitutes an election to create a tenancy relationship. *Id.*

Here, neither party challenges the trial court's ruling that the lease was terminated by the foreclosure of the property in January 1994. Furthermore, the lease it-

self does not address the status of a tenant holding over after termination of the lease. Therefore, we first examine the post-foreclosure conduct of the parties to determine Coinmach's tenancy status in January 1994.

■ It is undisputed that after Mosley, the original financer who foreclosed on the property, bought the complex at foreclosure and transferred it to PPR in January 1994, Coinmach continued in possession and sent rent checks to Gardenview Apartments. Aspenwood does not dispute the summary judgment testimony of both Mosley and Cragg of PPR that there was no communication between PPR and Coinmach, that neither Mosley nor PPR knew of Coinmach's existence or possession of the laundry room, and that neither Mosley nor PPR ever received or cashed any checks from Coinmach. Furthermore, Aspenwood presented evidence that neither Mosley nor PPR ever contacted Coinmach to inform it of the foreclosure sale or to ask it to vacate the property. Thus, we conclude that no new lease was formed between PPR and Coinmach. *See ICM Mortgage*, 902 S.W.2d at 532–33 (holding that tenant and foreclosure sale purchaser may independently enter new landlord-tenant relationship if both parties manifest consent to enter new lease but continuation in possession, without more, does not establish agreement to pay rent to lease).

When no new lease is formed and a tenant continues in possession, as here, the tenant becomes either a tenant at will for no fixed term, if he holds over with the landlord's consent, or a tenant at sufferance. *See Mount Calvary Missionary Baptist Church*, 2005 WL 1654752, at *6. Therefore, based on the post-foreclosure conduct of PPR and Coinmach, we conclude that Coinmach was a tenant at will for the three months between PPR's post-foreclosure purchase of the property and

Aspenwood's purchase of the apartment. *See ICM Mortgage*, 902 S.W.2d at 530 (holding that tenant at will is one who is in lawful possession of premises by permission of owner or landlord for no fixed term). As a tenant at will, Coinmach had no sure estate and became subject to being put out at any time. *See id.*

■ Aspenwood completed the purchase of the property in April 1994. Under the common law holdover rule, Aspenwood, as the new landlord, could then elect whether to treat Coinmach as a trespasser or as a tenant holding under the terms of the original lease. *See Bockelmann*, 788 S.W.2d at 571. The question, therefore, is whether Aspenwood's conduct manifested an intention to treat Coinmach as if it were a tenant holding under the lease. *See ICM Mortgage*, 902 S.W.2d at 530–33. If not, Coinmach necessarily became a tenant at sufferance without the consent of the landlord and was "merely an occupant in naked possession of property" and not in privity with the owner. *See id.* at 530.

Aspenwood's conduct, as indicated by the undisputed evidence, supports the conclusion that it did not consent to Coinmach's continued possession under the lease. On April 6, 1994, Aspenwood gave Coinmach written notice that the lease had been terminated by foreclosure and requested that Coinmach vacate the laundry rooms. Even though Coinmach continued to pay rent, Aspenwood maintains that it never cashed any checks it received from Coinmach, and Coinmach does not dispute this fact on appeal. Aspenwood filed a forcible entry and detainer suit against Coinmach and, when the writ of eviction it obtained was overturned by the county court at law, it appealed the decision, only to have its appeal dismissed for lack of jurisdiction. Aspenwood continued to assert that Coinmach was required to vacate the property because the lease had been terminated by the foreclosure, and it

filed the instant trespass to try title suit, seeking a declaration as to its rights along with other claims asserting Coinmach's wrongful behavior. The evidence that Aspenwood did not voluntarily consent to Coinmach's remaining on the premises is conclusive.

We conclude that, as a matter of law, there was no actual or implied contractual landlord-tenant relationship between Aspenwood and Coinmach. *See id.* at 533 (finding as matter of law no landlord-tenant relationship after foreclosure, where, despite tenant's manifestation of desire to lease property after foreclosure, landlord through repeated refusals to accept rent revealed only "unwavering disinterest" in contractual relationship). We further conclude that Aspenwood did not consent to Coinmach's remaining on the premises as a tenant at will. We therefore hold that the trial court did not err in holding that Coinmach was a tenant at sufferance of Aspenwood as a matter of law and thus could not be liable to Aspenwood for breach of lease, nor did it err in dismissing Aspenwood's breach of lease claims against Coinmach.

We overrule the first part of Aspenwood's first issue.[6]

### C. The June 11, 2008 Order Dismissing Aspenwood's Trespass, Trespass to Try Title, Tortious Interference, and Declaratory Judgment Claims

In the second part of its first issue, Aspenwood argues that the trial court's holding that Coinmach was a tenant at sufferance cannot dispose of Aspenwood's claim for trespass and trespass to try title claims. Consequently, in its second issue, Aspenwood argues that the trial court erred in dismissing its trespass and trespass to try title claims. In its fourth issue, it argues that the trial court erred in holding its trespass to try title claims moot after Coinmach vacated the premises, and in its eighth issue, it argues that the trial court erred in dismissing its Declaratory Judgment Act claim as invalid. Each of these rulings is based on the trial court's conclusion of law in its June 11, 2008 order that, as a tenant at sufferance of Aspenwood, "Coinmach Corporation had a possessory interest and right in the laundry rooms at the Aspenwood Apartments, from the date of the foreclosure in Jan., 1994, until Coinmach vacated the property in May, 2000." These rulings are thus based on the trial court's adjudication of the respective real property rights of Aspenwood and Coinmach in the title dispute between Aspenwood and Coinmach.

The Texas Property Code provides specific guidelines for adjudicating title interests and possessory rights in real estate. *Lighthouse Church of Cloverleaf v. Texas Bank,* 889 S.W.2d 595, 603 (Tex. App.-Houston [14th Dist.] 1994, writ denied). Chapter 22 of the Code governs trespass to try title suits, which are used to determine "title to lands, tenements, or

---

6. Under our holdings, Aspenwood's arguments that Coinmach's previous arguments to the contrary estopped it from arguing that the lease is not binding on the parties are moot. We note, however, that Coinmach did not change its position regarding the validity of the lease until it was required to acknowledge the ruling of the trial court that the lease was terminated by foreclosure, and therefore the doctrine of quasi-estoppel does not apply. *See Twelve Oaks Tower I, Ltd. v. Premier Aller-* *gy, Inc.,* 938 S.W.2d 102, 111 (Tex.App.-Houston [14th Dist.] 1996, no writ) ("Under the principle of quasi-estoppel, a party is precluded from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken"; doctrine applies "where it would be unconscionable to allow a party to maintain a position inconsistent with one in which it acquiesced, or of which it accepted a benefit").

other real property." TEX. PROP.CODE ANN. §§ 22.001–22.045 (Vernon 2000); *Lighthouse Church,* 889 S.W.2d at 603. Any suit that adjudicates real property rights is a trespass to try title suit. *See* TEX. PROP. CODE ANN. § 22.001 ("A trespass to try title action is the method of determining title to lands, tenements, or other real property."); *Hill v. Preston,* 119 Tex. 522, 34 S.W.2d 780, 787 (1931) ("The remedy of trespass to try title is given in all cases where the right of title or interest and possession of land may be involved."); *Merit Mgmt. Partners I, L.P. v. Noelke,* 266 S.W.3d 637, 643 (Tex.App.-Austin 2008, no pet.) ("A suit 'for the recovery of land' is a suit that determines title."). District courts have exclusive jurisdiction to determine title to real property. *See Doggett v. Nitschke,* 498 S.W.2d 339, 339 (Tex.1973); *Merit Mgmt. Partners,* 266 S.W.3d at 643. A leasehold is an interest in real property, and a dispute over the existence of a leasehold or its extent and parameters involves a question of title to real property that presents a title question for the district court. *Merit Mgmt. Partners,* 266 S.W.3d at 643. Rival claims to title or right of possession may be adjudicated in a trespass to try title action. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 755 (Tex. 2003).

 Chapter 24 of the Property Code governs forcible entry and detainer actions, which "provide[ ] a summary method for determining the right of a party to the possession of real property." *Lighthouse Church,* 889 S.W.2d at 603; *see also* TEX. PROP.CODE ANN. §§ 24.001–24.011 (Vernon 2000 & Supp.2009) (governing forcible entry and detainer actions). To remove a tenant by sufferance from possession of the premises, the new owner must file a forcible detainer suit. *Lighthouse Church,* 889 S.W.2d at 603. A forcible detainer action is the procedure used to determine the right to immediate possession of real property if there is no unlawful entry. *Hong Kong Dev. Inc. v. Nguyen,* 229 S.W.3d 415, 433 (Tex.App.-Houston [1st Dist.] 2007, no pet.). In such an action, "the only issue shall be as to the right to actual possession; and the merits of the title shall not be adjudicated." TEX.R. CIV. P. 746; *Villalon v. Bank One,* 176 S.W.3d 66, 70 (Tex.App.-Houston [1st Dist.] 2004, pet. denied); *Ward v. Malone,* 115 S.W.3d 267, 270 (Tex.App.-Corpus Christi 2003, pet. denied). To prevail in a forcible detainer action, the plaintiff is not required to prove title, but is only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession. *Villalon,* 176 S.W.3d at 70; *Rice v. Pinney,* 51 S.W.3d 705, 709 (Tex. App.-Dallas 2001, no pet.). The judgment may be appealed to the county court. TEX.R. CIV. P. 749.

 However, if the resolution of a title dispute is necessarily intertwined with the issue of possession, so that the right of possession depends upon it, possession may not be adjudicated without first determining title. *Dormady v. Dinero Land & Cattle Co.,* 61 S.W.3d 555, 557 (Tex.App.-San Antonio 2001, pet. dism'd w.o.j.); *Rice,* 51 S.W.3d at 709; *Haith v. Drake,* 596 S.W.2d 194, 196 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.). In such a case, neither the justice court nor the county court, on appeal, has jurisdiction. *See Rice,* 51 S.W.3d at 709; *Haith,* 596 S.W.2d at 196. Only the district court has jurisdiction to determine title. *See Doggett,* 498 S.W.2d at 339; *Merit Mgmt. Partners,* 266 S.W.3d at 643. However, a forcible detainer action is cumulative, not exclusive, of other remedies a party may have in the courts of this State, including a suit to try title. *See* Tex. Prop.Code Ann. § 22.045 (providing that remedies in trespass to try title suit are cumulative); *Scott*

*v. Hewitt,* 127 Tex. 31, 90 S.W.2d 816, 818–19 (1936); *Dormady,* 61 S.W.3d at 558; *Rice,* 51 S.W.3d at 709.

■■■ If all matters between the parties cannot be adjudicated in the justice court in which forcible entry and detainer proceedings are pending due to the limited subject matter jurisdiction of that court, either party may maintain an action for relief in a court of competent jurisdiction. *Hong Kong Dev. Inc.,* 229 S.W.3d at 437. Such an action may run concurrently with a forcible detainer suit, even if the other action adjudicates matters that could result in a different determination of possession. *Id.* However, where the right to immediate possession in a forcible detainer action necessarily requires resolution of a title dispute, a justice court has no jurisdiction to enter a judgment. *Salaymeh v. Plaza Centro, LLC,* 264 S.W.3d 431, 435 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Thus if resolution of a title dispute is a prerequisite to determination of the right to immediate possession, the justice court is deprived of jurisdiction over the dispute. *Id.*

■■■ "To recover in a trespass to try title action, the plaintiff must recover on the strength of his own title." *Rogers v. Ricane Enters., Inc.,* 884 S.W.2d 763, 768 (Tex.1994). Damages available in a trespass to try title suit include rents and profits, damages for the use and occupation of the premises, and damages for any special injury to the property. *See* Tex.R. Civ. P. 783(f), 805; *see also Musquiz v. Marroquin,* 124 S.W.3d 906, 912 (Tex. App.-Corpus Christi 2004, pet. denied) ("The plaintiff in a trespass to try title suit may recover rents or damages incurred from the loss of the use of land."); *City of Austin v. Teague,* 570 S.W.2d 389, 394 (Tex.1978) (holding that loss of rentals is appropriate measure of damages for temporary loss of use of land); *McLain,* 1996

WL 721954, at *6 (noting that tenants at sufferance have "a duty to pay for the use and occupation of the land (that is, its fair rental value)").

Here, Coinmach contends that, as a tenant at sufferance of Aspenwood, it had and continued to have a possessory interest in the property it had previously held under a lease until the eviction process, as set out in the Texas Property Code, was completed. *See Russell v. Am. Real Estate Corp.,* 89 S.W.3d 204, 208 (Tex.App.-Corpus Christi 2002, no pet.) (holding that tenants whose lease was terminated by foreclosure were tenants at sufferance and continued to remain in possession until eviction process has been completed). It argues that because Aspenwood's forcible entry and detainer action never resulted in completion of the eviction process as outlined in the Texas Property Code, it retained a possessory interest in the property. It cites *Russell* and *Lighthouse Church* to support its position. *See id.* at 208–09; *Lighthouse Church,* 889 S.W.2d at 603. This argument is unavailing.

In both of the cases cited by Coinmach, the only interest found by the court was a right of possession of a tenant purportedly holding under the terms of a lease that provided possessory rights, and the court's sole holding was that the tenant retained the right to possession accorded by the lease until the justice court adjudicated that issue. As the authorities show, determination of a right of possession is not a determination of title and, where the resolution of a title dispute is intertwined with the issue of possession, possession may not be adjudicated without first determining title. *Rice,* 51 S.W.3d at 709; *Haith,* 596 S.W.2d at 196.

In its motion for rehearing, however, Coinmach argues that our opinion erroneously characterized this case as involving intertwined issues of title and possession,

and it contends that "title has never been at issue in this case." It further argues that "res judicata and collateral estoppel are at issue" because of Aspenwood's 1996 attempt to remove Coinmach from the property through a forcible entry and detainer action. And it argues that our opinion creates "a title requirement in [an] eviction case" that "divests justice of peace and county courts of jurisdiction even in simple possession matters" that will lead to district courts being burdened with eviction dockets. We have granted rehearing to dispel any confusion about our opinion.

Aspenwood has asserted throughout the entirety of its dealings with Coinmach that Coinmach's right under the original lease terminated with the foreclosure, and, therefore, Coinmach had no right of possession or any interest in the property. Thus, the title questions of whether a leasehold existed and of its extent and parameters have been central issues from the beginning of this case. *See Merit Mgmt. Partners*, 266 S.W.3d at 643 (holding that leasehold is interest in real property and dispute of existence of leasehold or its extent and parameters involves question of title to real property that presents title question for district court). Coinmach's right of possession, if any such right existed, arose solely from the existence of some kind of leasehold. Thus, determination of Coinmach's right of possession necessarily required the resolution of the title questions surrounding the validity of the lease.

■ This case is not a simple eviction case. It is a case in which the question of the right of possession is intertwined with a title issue—namely, the existence and extent of a leasehold interest. Title cannot be adjudicated by the justice court or county court at law, but must be determined, as here, in a trespass to try title suit in the district court.

*See Merit Mgmt. Partners*, 266 S.W.3d at 643; *Hong Kong Dev. Inc.*, 229 S.W.3d at 437. Nor is a tenant's mere right of possession until the completion of an eviction process a claim to superior title. *Mount Calvary Missionary Baptist Church*, 2005 WL 1654752, at *7. Rather, "[A] judgment of possession in a forcible detainer action is a determination only of the right to immediate possession and does not determine the ultimate rights of the parties to any other issue in controversy relating to the realty in question." *See Hong Kong Dev. Inc.*, 229 S.W.3d at 437 (quoting *Lopez v. Sulak*, 76 S.W.3d 597, 605 (Tex.App.-Corpus Christi 2002, no pet.)). The justice of the peace did not have jurisdiction to determine Coinmach's ultimate right of possession under the lease. *See Merit Mgmt. Partners*, 266 S.W.3d at 644. Thus, the proceedings in the justice court and the county court at law that allowed Coinmach to remain in possession of the laundry rooms were not a determination of Coinmach's ultimate rights, if any, under the lease—they merely addressed the issue of immediate possession while Aspenwood sought resolution of the issues surrounding the status of the original lease.

■ The instant litigation was brought by Aspenwood specifically to try title, as well as to recover damages due to Coinmach's wrongful possession of the premises as a trespasser, and the district court determined that Coinmach did not have a valid lease and was therefore a tenant at sufferance. Contrary to Coinmach's arguments, its status as a tenant at sufferance did not confer upon it any right of possession. *See Mount Calvary Missionary Baptist Church*, 2005 WL 1654752, at *7 ("A tenant at sufferance is merely an occupant in naked possession of property after his or her right to possession has ceased."); *see also ICM Mortgage*, 902

S.W.2d at 530 (holding that tenant at sufferance "is one who wrongfully continues in possession of property after his right to possession has ceased"); *McLain,* 1996 WL 721954, at *5 (holding that landlord may treat tenant at sufferance either as trespasser or as periodic tenant retroactively to beginning of relationship). Furthermore, the judgment of the justice court and county court at law could not be res judicata or serve as the basis for estoppel in a title proceeding in the district court. TEX. CIV. PRAC. & REM.CODE ANN. § 31.004(a) (Vernon 2008); *see also Lopez,* 76 S.W.3d at 606 ("A judgment in a justice court granting a landlord possession in a forcible detainer action is not res judicata of a tenant's trespass to try title suit in district court."); *McCloud v. Knapp,* 507 S.W.2d 644, 647 (Tex.Civ.App.-Dallas 1974, no writ) (holding that judgments of justice court in forcible detainer action were not res judicata of suit for judgment declaring right to enforce lifetime tenancy or, alternatively, for damages in lieu of possession).

The trial court, in the instant suit, correctly determined that Coinmach was a tenant at sufferance of Aspenwood, but it also concluded in its June 11, 2008 order that because Coinmach was a tenant at sufferance, it had "had a possessory interest and right in the laundry rooms at the Aspenwood Apartments, from the date of the foreclosure in Jan., 1994, until Coinmach vacated the property in May, 2000." This conclusion of law was erroneous. *See Bockelmann,* 788 S.W.2d at 571; *Carrasco,* 224 S.W.3d at 368; *McLain,* 1996 WL 721954, at *5; *see also Restatement (Second) of Property* § 14.5 cmt. a (1977). A tenant who remains in possession of premises after termination of the lease occupies wrongfully as a tenant at sufferance and is impliedly liable to the landlord for the use and occupation or the fair rental value of the property. *See Bockelmann,* 788 S.W.2d at 571; *Carrasco,* 224 S.W.3d at 368; *McLain,* 1996 WL 721954, at *5; *see*

*also* RESTATEMENT (SECOND) OF PROPERTY § 14.5 cmt. a (1977).

Because of its erroneous conclusion that Aspenwood, as a tenant at sufferance, had a possessory interest in the laundry rooms, the trial court erred in making a number of holdings in the same June 11, 2008 order predicated upon that conclusion. Specifically, it erroneously held that "the legal effect of the Court's May 29, 2007 ruling is to preclude [Aspenwood's] remaining causes of action as a matter of law"; that "Aspenwood shall take nothing by way of its common law trespass and trespass-to-try-title claims"; and that Aspenwood's "trespass to try title was mooted in May, 2000 because Coinmach left the property, never to return." It also erred in holding, on the same basis, "that Aspenwood is not entitled to any relief on its Declaratory Judgment Act claim." *See* TEX. PROP.CODE ANN. § 22.045 (providing remedies in trespass to try title suit are cumulative).

We conclude that Coinmach's status as a tenant at sufferance does not prevent Aspenwood from trying its claims for trespass, trespass to try title, and the resulting damages or from trying its claims for declaratory judgment.

We sustain the second part of Aspenwood's first issue, as well as its second, fourth, and eighth issues.

### D. Tortious Interference Claims

In its third and fifth issues, Aspenwood argues that the trial court erred in dismissing its tortious interference claim and in holding that that claim was barred by limitations on the basis of Coinmach's status as tenant at sufferance. Coinmach argues that, as a tenant at sufferance, it had a possessory interest, and, therefore, it "cannot have tortiously interfered with [Aspenwood's] prospective contractual relations because it was exercising its own lawful rights of possession and that there

is no independent tort[,] which is a required predicate to such a claim." However, for the same reasons we have already discussed, the trial court erroneously concluded that Coinmach had a "possessory interest", and Aspenwood presented evidence raising a fact issue on its claim that Coinmach's conduct tortuously interfered with Aspenwood's prospective contractual relations. Thus, Coinmach was not entitled to judgment as a matter of law on this ground.

▪ The trial court also held that Aspenwood's "tortious interference with prospective contractual relations is barred by the statute of limitations." Tortious interference claims are subject to a two-year statute of limitations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon Supp. 2010); *see also First Nat'l Bank v. Levine*, 721 S.W.2d 287, 288–89 (Tex.1986) (holding that tortious interference falls within the definition of trespass under section 16.003(a)). However, Aspenwood argues that Coinmach's continued occupation of the laundry rooms was a trespass that constituted a continuous tort, thus tolling the statute of limitations until the tortious conduct ceased. Although the Texas Supreme Court has "neither endorsed nor addressed" the continuing tort doctrine, *see Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n. 8 (Tex.2005), several courts of appeals have held that a cause of action for a continuing tort does not accrue until the defendant's tortious conduct ceases. *See, e.g., Krohn v. Marcus Cable Assocs., L.P.*, 201 S.W.3d 876, 880 (Tex.App.-Waco 2006, pet. denied); *Rogers v. Ardella Veigel Inter Vivos Trust*, 162 S.W.3d 281, 290 (Tex.App.-Amarillo 2005, pet. denied); *W.W. Laubach Trust v. Georgetown Corp.*, 80 S.W.3d 149, 159 (Tex.App.-Austin 2002, pet. denied). "In determining whether there is a continuing tort, 'care must be taken to distinguish between 1) repeated injury proximately caused by repetitive wrongful or tortious acts and 2) continuing

injury arising from one wrongful act. While the former evinces a continuing tort, the latter does not.' " *Krohn*, 201 S.W.3d at 880 (quoting *Rogers*, 162 S.W.3d at 290).

▪ Here, Aspenwood alleges that Coinmach's continued occupation of the laundry rooms after the termination of its lease and Aspenwood's demand that it vacate the premises interfered with Aspenwood's ability to lease the space to another laundry service. Thus, it has alleged repeated injury caused by allegedly repetitive wrongful or tortious acts that continued until Coinmach vacated the premises in 2000—two years after Aspenwood filed this case in 1998. We conclude that this is the type of conduct that tolls the statute of limitations under the continuing tort doctrine.

In its motion for rehearing, Coinmach cites *Electronic Bankcard Systems, Inc. v. Retriever Industries, Inc.*, in which this Court declined to apply the continuing tort doctrine to a tortious interference claim. See No. 01–01–00240–CV, 2003 WL 204717, at *7 (Tex.App.-Houston [1st Dist.] Jan. 30, 2003, no pet.) (mem.op.). However, *Electronic Bankcard Systems* is factually distinguishable from the present case. There, the complained-of wrongful conduct "occurred when appellants' sales representatives were persuaded to discontinue their relations with appellants," which allegedly occurred in 1994 and early 1995. In concluding that this action did not toll the statute of limitations for a suit filed in 1999, this Court noted the distinction between wrongful conduct that is ongoing and wrongful conduct that has ceased but continues to create ongoing damages. *Id.* We concluded that "[t]he continuing loss of residual fees that may have resulted from that alleged wrongful conduct does not toll the statute of limitations" and that the appellants in that case did "not complain[ ] of an ongoing wrong that justifies application of the continuing tort doctrine." *Id.*

Here, Aspenwood has complained of a continuing wrong—Coinmach's presence on the property after its lease was terminated in 1994 until 2000.

Thus, we conclude that the trial court erred in dismissing Aspenwood's claim for tortious interference.

We sustain Aspenwood's third and fifth issues.

## E. DTPA Claims

In its sixth issue, Aspenwood argues that the trial court erred in concluding in its separate June 11, 2008 order on Coinmach's no evidence motion for summary judgment that Aspenwood was not a consumer under the DTPA and in dismissing its DTPA claims against Coinmach.

A DTPA consumer is an individual or entity "who seeks or acquires by purchase or lease, any goods or services.... " Tex. Bus. & Com.Code Ann. § 17.45(4) (Vernon Supp.2009). The goods or services sought must be the basis for the suit. *Favor v. Hochheim Prairie Farm Mut. Ins. Ass'n,* 939 S.W.2d 180, 182 (Tex.App.-San Antonio 1996, writ denied).

Here, Aspenwood did not seek or receive a good or service from Coinmach. The only thing Aspenwood could have potentially sought or received from Coinmach was monthly rent payments on the leased laundry rooms or damages for trespass. This is not sufficient to confer consumer status on Aspenwood under the DTPA. *See id.* (holding that plaintiff who sought goods or services for her clients was not DTPA consumer). Aspenwood has provided no evidence to support its claim that it was a consumer of services provided by Coinmach. We conclude that the trial court did not err in granting Coinmach summary judgment on Aspenwood's DTPA claims based on its ruling that Aspenwood was not a consumer under the DTPA.

We overrule Aspenwood's sixth issue.

## F. Prevailing Party Legal Fees

In its seventh issue, Aspenwood argues that the trial court erred in determining that it was not a prevailing party on Coinmach's counterclaims. Because of our prior rulings, this issue is moot.

## CONCLUSION

We affirm the judgment of the trial court dismissing Aspenwood's breach of lease and DTPA claims. We reverse the trial court's July 11, 2008 order clarifying its previous "tenant-at-sufferance" order entered on May 29, 2007, and we remand the case for further proceedings on Aspenwood's claims of trespass, trespass to try title, tortious interference, and its declaratory judgment action consistent with this opinion.