# IN THE SUPREME COURT OF TEXAS

═══════════
No. 11-0213
═══════════

COINMACH CORP. F/K/A SOLON AUTOMATED SERVICES, INC., PETITIONER,

v.

ASPENWOOD APARTMENT CORP., RESPONDENT

═══════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════════════════════════

JUSTICE GUZMAN, joined by JUSTICE DEVINE and JUSTICE BROWN, concurring.

In this dispute between an aptly represented commercial tenant and landlord, the Court holds that a tenant at sufferance is a trespasser, which satisfies the predicate tort requirement of a tortious interference claim. But because the rule the Court announces today also impacts residential tenants, many of whom are "ordinary working families, without the resources for legal counsel," I write separately to expound in a more nuanced manner the heightened proof required to support a tortious interference claim.[1] Under the Court's holding, such tenants will now potentially be required to defend against actions for trespass and tortious interference. Importantly, in facing a tortious interference claim, tenants are exposed not only to damages traditionally recognized under landlord-

---

[1] Brief of Amicus Curiae Texas Housing Justice League, *Coinmach Corp. v. Aspenwood Apartment Corp.*, No. 11-0213 at 5 (Tex. May 10, 2012).

tenant law—that is, rent or lost profits and property damage—but also to heightened emotional distress or exemplary damages.

The Texas Housing Justice League, in its amicus brief, voices particular concern that this "tortification" of landlord-tenant law could subject residential tenants, such as those left in a property after foreclosure, to excessive liability.[2] In an effort to assuage these concerns, the Court today clarifies that although it holds a tenant at sufferance is a trespasser, this holding does not expose innocent tenants to liability for additional tort damages, such as when tenants remain in possession under a good faith belief that they are entitled to do so. __ S.W.3d __, __. But the Court's opinion only implicitly acknowledges similar limitations with respect to liability arising out of a claim for tortious interference. *See id.* at __.

For this reason, I write separately to emphasize that in a claim for tortious interference, which may seek more than actual damages, the landlord must satisfy a greater burden of proof: it must prove the tenant at sufferance specifically intended to interfere with the landlord's relationship or contract with the prospective lessee. If a valid court order obtained in good faith grants a tenant at sufferance the right to possess property, the order will generally demonstrate the tenant's lack of the heightened intent necessary to support a claim for more than actual damages.

## I. Background

As the Court observes, the parties in this case have been litigating issues surrounding possession for well over a decade. __ S.W.3d at __. Though the Court ultimately concludes that as

---

[2] *Id.* at 4.

a tenant at sufferance, Coinmach is a trespasser and may be held liable in tort for actual damages, it is undisputed that over many years Coinmach maintained possession of the premises pursuant to court orders rendered in its favor by various Harris County courts. Beginning in 1994, after receiving written notice from Aspenwood to vacate the premises, Coinmach[3] filed a writ of reentry action in the Justice Court of Harris County and was awarded the right to possession. In the subsequent forcible entry and detainer actions Aspenwood filed in 1994 and 1996, Coinmach similarly obtained orders granting it the right to immediate possession of the premises. Finally, in 1999 after Aspenwood removed Coinmach's laundry machines from the premises, Coinmach again filed for and successfully obtained a writ of reentry granting it immediate possession. Thus, for a significant portion of this litigation, by asserting its right to possession of the property, Coinmach was acting under court orders.[4]

Aspenwood first raised its tortious interference claims in 1998, filing the instant suit in district court. 349 S.W.3d 621, 627–28. After nearly a decade of protracted litigation, the trial court found Coinmach was a "tenant at sufferance as a matter of law." *Id*. at 629. Coinmach subsequently filed a motion for summary judgment on Aspenwood's tortious interference claims, arguing that

---

[3] At the time, Coinmach was doing business under the name of Solon Automated Services, Inc.

[4] Aspenwood maintains that Coinmach "made a false representation of a right to property which it did not have, for the purpose of inducing [the Harris County courts] to allow Coinmach to remain in possession" of the premises. As explained in Part III, *infra*, if Aspenwood ultimately proves this allegation, the prior orders in favor of Coinmach's immediate possession would not act to negate the specific intent to interfere. Such protections would necessarily only be available to tenants who procured such court orders in good faith.

because it was a tenant at sufferance and had a possessory interest in the property, its conduct could not have been tortious. *Id.* The trial court agreed, finding that "Coinmach cannot have tortiously interfered with [Aspenwood's] prospective contractual relations because it was exercising its own lawful rights of possession and that there is no independent tort which is a required predicate to such claim[.]" *Id.* at 630 (first alteration in original). But the court of appeals reversed, concluding that as a tenant at sufferance Coinmach had no possessory interest and thus was not entitled to judgment as a matter of law with respect to Aspenwood's claims for tortious interference. *Id.* at 638–39. Today, we affirm the court of appeals' judgment reversing and remanding Aspenwood's tortious interference claims because trespass is an independently tortious or wrongful act. __ S.W.3d at __.

## II. Tortious Interference

As the Court notes, to establish a cause of action for tortious interference with prospective business relations the plaintiff must show: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. __ S.W.3d at __; *see Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001); *Bradford v. Vento*, 48 S.W.3d 749, 757 (Tex. 2001).

The Court correctly concludes that "Coinmach was and remained a trespasser from the time Aspenwood first sent a notice to vacate until Coinmach vacated the premises six years later." __

4

S.W.3d at __. And, because trespass is an independently tortious or wrongful act that may potentially support a claim for tortious interference with prospective business relations, the trial court necessarily erred in granting Coinmach's motion for summary judgment on the basis that there was no independent tort—a necessary predicate to a tortious interference claim. *Id.* Importantly, the Court's holding necessarily means that a plaintiff who raises a claim for tortious interference against a tenant at sufferance will nearly always satisfy the predicate tort requirement.

But the relative ease with which a landlord may prove the predicate tort requirement in a tortious interference claim against a tenant at sufferance does not diminish its high hurdle of proving specific, heightened intent. As explained below, a tenant who maintains possession in good faith pursuant to a valid court order will typically lack this heightened intent.

### III. Intent to Interfere

To sustain a claim for tortious interference with prospective business relations, the plaintiff must demonstrate that the tenant at sufferance, by maintaining possession of the premises at issue, acted with an intent to interfere with the prospective contract between the landlord and the prospective lessee. __ S.W.3d at __; *see also Bradford*, 48 S.W.3d at 757 (finding no tortious interference in the absence of intent to harm the plaintiff's business relations). This Court has explained that interference is intentional "'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result.'" *Bradford*, 48 S.W.3d at 757 (quoting RESTATEMENT (SECOND) OF TORTS § 766B cmt. d (1979)). We further reasoned that "'[i]f [the actor] had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose, the interference may be found

to be not improper.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 766B cmt. d (1979)) (alterations in original); *see also Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 861 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("Mere participation in the transaction is not sufficient to establish an intentional action to harm [the plaintiff].").

Accordingly, in *Bradford* we declined to find that the defendant's statements to police during a criminal trespass investigation constituted legally sufficient evidence of intent to harm the plaintiff's prospective business relations with customers. 48 S.W.3d at 758. Instead, the plaintiff's inability to do business with customers was merely an incidental result of the defendant's efforts to end the present disturbance and protect property. *Id.* Similarly, when a tenant at sufferance exercises a right of possession pursuant to a court order, the landlord's inability to lease the premises to others is necessarily "a mere incidental result of conduct [the tenant] was engaging in for another purpose"—that is, for the purpose of exercising its court-sanctioned right to possession. *Id.* at 757. Under such circumstances, a defendant's good faith belief in its right to possess the property premised on court orders will likely preclude a plaintiff from establishing the heightened intent necessary to support a claim for tortious interference.[5]

In the present case, Coinmach remained in possession of the premises pursuant to favorable court orders obtained in the course of litigation. Under most circumstances, this would almost

---

[5] Of course, a tenant at sufferance may have a good faith belief in its right to possession even in the absence of court orders. Under these circumstances, the landlord still carries the heavy burden of proving the tenant specifically intended to interfere with the landlord's potential business relations. *Bradford*, 48 S.W.3d at 757–58. The tenant's mere intent to maintain possession will not sustain a claim for tortious interference.

6

certainly demonstrate a tenant lacked the specific intent to interfere. But here it is unclear whether Coinmach's possession under these court orders was in good faith. Indeed, Aspenwood has put forth some evidence that Coinmach may have procured these court orders through fraud. For one, to obtain a writ of reentry Coinmach presented a sworn affidavit to the justice court that relied on the lease agreement but omitted any mention of the lease's express provision that it was "subordinate to any mortgage or deed of trust on the premises." Aspenwood has also presented some evidence regarding the dangerously poor condition of Coinmach's equipment and argues that the same affidavit falsely claimed the equipment was functional. Thus, summary judgment in favor of Coinmach on Aspenwood's tortious interference claim is not possible because there is a remaining fact issue as to whether Coinmach procured the court orders through fraud.[6]

## IV. Conclusion

Although I join the Court's opinion, I am mindful of the implications of the holding to residential tenants, particularly those with limited resources. Despite the Court's assurances that "innocent" trespassers—a term that includes those who remain on premises pursuant to valid court orders—will only be held liable for actual damages sustained, in a claim for tortious interference it is possible that a tenant at sufferance may be held liable for far more than actual damages. A successful plaintiff may potentially recover emotional distress and exemplary damages.

For this reason, the Court's remand on Aspenwood's tortious interference claim should not be read so broadly as to extend liability for these additional damages to tenants at sufferance who

---

[6] The existence of fraud is a question typically left to the trier of fact. *Quinn v. Dupree*, 303 S.W.2d 769, 774 (Tex. 1957).

remain on premises in good faith reliance on previously obtained court orders.  Because the Court

does not reach discussion of this issue with respect to Aspenwood's tortious interference claim, I

respectfully concur.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** November 22, 2013