Belknap
No. 96-125

JACOB M. ATWOOD

v.

STEPHEN D. AND KRISTIE L. OWENS

November 6, 1997

*Haughey, Philpot & Laurent*, of Laconia (*William Philpot, Jr.* on the brief and orally), for the plaintiff.

*Wescott, Millham & Dyer*, of Laconia (*Robert J. Bradfield III* on the brief and orally), for the defendants.

JOHNSON, J. The defendants, Stephen and Kristie Owens, appeal the decision of the Superior Court (*Perkins*, J.) that the plaintiff, Jacob Atwood, did not violate RSA 540-A:6 (1997) by requiring a $5,000 security deposit pursuant to a rental agreement (agreement) with the defendants. We affirm.

Because the defendants failed to provide this court with a record and transcript of the hearing, we assume that the evidence was sufficient to support the result reached by the trial court.

Accordingly, we review the superior court's order for errors of law only. *See State v. Woods*, 139 N.H. 399, 403, 654 A.2d 960, 963 (1995).

After a hearing on the merits, the trial court found the following facts. In December 1993, the defendants signed an agreement with the plaintiff to lease a property known as the Temperance Tavern (tavern) in Gilmanton. The tavern had previously been operated as a bed and breakfast inn, and the trial court found that "[a]lthough [the] defendants lived on the rented premises, . . . they rented the premises for the purpose of operating a bed and breakfast." The agreement provided for monthly rent of $1,500 and a twelve-month term. As part of the agreement, the defendants tendered a $5,000 security deposit to the plaintiff. The agreement gave the defendants the option to purchase the tavern and further stated that in the event that the tavern was sold to another party, the plaintiff would reimburse the defendants $1,000 for each month they occupied the tavern.

The parties were ultimately unable to agree on a purchase price for the tavern and accordingly terminated their negotiations during the summer of 1995. The defendants subsequently served the plaintiff with notice that they would leave the tavern at the end of November 1995. In September 1995, the defendants demanded that the plaintiff immediately return $3,500 of the original security deposit, which they claimed was illegally collected since RSA 540-A:6 provides that security deposits be limited to a sum equivalent to one month's rent. In response, the plaintiff filed a petition for declaratory relief to determine whether he had unlawfully collected and withheld the security deposit pursuant to RSA 540-A:6.

RSA 540-A:6, I, provides: "A landlord shall not demand or receive any security deposit in an amount or value in excess of one month's rent or $100, whichever is greater." "Landlord" is defined by the statute as "a person . . . who rents or leases to another person a rental unit," RSA 540-A:5, I (1997), and a "rental unit" is defined as "each separate part of any *residential premises* which has full facilities for habitation, including contiguous living, sleeping, kitchen and bathroom facilities, which is held out for rental by the landlord." RSA 540-A:5, IV (1997) (emphasis added). The plaintiff argued he was not in violation of RSA 540-A:6 because the defendants signed the agreement "in the context of a leasehold of a commercial building" and therefore he was exempt from the statute.

The superior court agreed, ruling that although RSA chapter 540-A does not define the term "residential premises," the defendants rented the tavern for a "nonresidential purpose," and thus the

tavern did not qualify as a "rental unit" under RSA chapter 540-A. The court reasoned that the plaintiff therefore was not a "landlord" and was not required by law to limit the security deposit to one month's rent. *See* RSA 540-A:5, :6. Consequently, the court granted the plaintiff's request for declaratory relief, and this appeal followed.

 This appeal requires us to determine whether the term "rental unit" in RSA 540-A:5 includes a structure in which the tenants reside and operate a commercial venture. "This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole, and when the issue raised presents a new question of statutory construction, we begin our analysis with an examination of the statutory language." *Cheever v. Southern N.H. Regional Med. Ctr.*, 141 N.H. 589, 590-91, 688 A.2d 565, 566-67 (1997) (brackets, quotations, and citation omitted). We look to the plain meaning of the words used in the statute when possible. *See id.* at 591, 688 A.2d at 567. Nevertheless, we do not assume that the legislature would enact statutory language that would lead to an absurd result. *See State v. Kay*, 115 N.H. 696, 698, 350 A.2d 336, 338 (1975).

The defendants argue that although the term "residential premises" is undefined in the statute, its meaning is unambiguous and the term would apply to the tavern regardless of whether their primary purpose for renting the structure is to operate a commercial venture. They argue that because they actually resided within the structure housing their commercial venture, *i.e.*, the tavern, the statute applies so long as their living quarters contain "full facilities for habitation, including contiguous living, sleeping, kitchen and bathroom facilities." RSA 540-A:5, IV. We do not agree.

While we begin our analysis with an examination of the statutory language, we must bear in mind that

> it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish. Therefore, while we give undefined language its plain and ordinary meaning, we must keep in mind the intent of the legislation . . . and not simply . . . examin[e] isolated words or phrases found therein.

*Appeal of Ashland Elec. Dept.*, 141 N.H. 336, 341, 682 A.2d 710, 713 (1996) (quotations and citation omitted). It would be absurd to interpret the statute to encompass within the term "residential

premises" a large commercial property containing only modest living quarters. *See Shwachman v. Khoroshansky,* 448 N.E.2d 409, 411 (Mass. App. Ct. 1983) (trial court did not err in ruling that statute, which by its terms pertained to residential property, was not intended to apply to leases that are primarily commercial and only incidently residential).

Furthermore, it is well-settled that we will not redraft a statute to evince a meaning not included in the statutory language. *See Lachapelle v. Town of Goffstown,* 134 N.H. 478, 479, 593 A.2d 1152, 1153 (1991). Accordingly, we will not interpret this statute to encompass commercial leases where the "residential" component of the leasehold is incidental. "If the security deposit law is to be extended to cover leases which are primarily commercial in nature, it should be done by explicit legislative action which will give fair warning to landlords." *Shwachman,* 448 N.E.2d at 411.

Accordingly, we conclude as a matter of law that if the primary purpose for renting the structure is commercial, then RSA chapter 540-A does not apply. The trial court found as a matter of fact that the "defendants rented the premises for a non-residential purpose." Because we assume that in this case the evidence was sufficient to support the trial court's factual findings, we find no error as a matter of law in its ruling that the plaintiff was not subject to the requirements of RSA chapter 540-A.

*Affirmed.*

All concurred.