1st Circuit — Lancaster District Division
No. 2012-198

## MARY EVANS

v.

## J FOUR REALTY, LLC

Argued: January 16, 2013
Opinion Issued: February 13, 2013

*Waystack Frizzell, Trial Lawyers,* of Colebrook (*Philip R. Waystack* and *Sandra L. Cabrera* on the brief, and *Ms. Cabrera* orally), for the petitioner.

*Kazan, Shaughnessy, Kasten & McDonald, PLLC,* of Manchester (*Brian C. Shaughnessy* on the brief and orally), for the respondent.

DALIANIS, C.J. The respondent, J Four Realty, LLC (J Four), appeals an order of the 1st Circuit Court — Lancaster District Division (*Patten,* J.) finding that it violated RSA 540-A:2 and :3, II (2007) by using self-help to evict the petitioner, Mary Evans, and awarding her actual damages of $3,000 and attorney's fees and costs, *see* RSA 540-A:4, IX(a) (Supp. 2012). We affirm in part, reverse in part, and remand.

The trial court found, or the record supports, the following facts. The petitioner lived for approximately five years in an apartment with two bedrooms, a kitchen, a living room, and one bathroom, which was part of a resort called "Naturally New Hampshire Healthfully Yours Resort, Inc." The petitioner's apartment was adjacent to the resort's office and was not part of the hotel portion of the resort. The petitioner did not have a written lease; she resided in the apartment as a tenant at will pursuant to an informal agreement with the resort's prior owner.

The respondent became the owner of the resort property on January 9, 2008, having purchased it at a foreclosure sale in late 2007. Because she was unaware of the foreclosure, the petitioner continued to pay rent to the prior owner of the resort.

On August 3, 2008, the respondent dispatched its agent to the petitioner's apartment to evict her. The agent arrived at the petitioner's residence with a deputy sheriff and a town police officer and told her that she had to leave her apartment with all of her property by the end of the day. The petitioner complied with the agent's demand.

The petitioner brought a petition against the respondent under RSA chapter 540-A, alleging that the respondent's conduct violated RSA 540-A:2

and :3, II and seeking damages under RSA 540-A:4, IX(a). Following an evidentiary hearing, the trial court ruled in her favor, and this appeal followed.

"We review the trial court's legal rulings *de novo*, but defer to its findings of fact if supported by the record." *O'Hearne v. McClammer*, 163 N.H. 430, 436 (2012) (quotation omitted).

■ The respondent first argues that the trial court erroneously determined that it was a "landlord" within the meaning of RSA chapter 540-A. Resolving this issue requires that we interpret the pertinent statutory provisions. We review the trial court's statutory interpretation *de novo. Town of Atkinson v. Malborn Realty Trust*, 164 N.H. 62, 67 (2012). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Id.* When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We also interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.*

■ RSA 540-A:1, I (2007) defines a "[l]andlord" as "an *owner*, lessor or agent thereof *who rents or leases* residential premises including manufactured housing or space in a manufactured housing park to another person." (Emphases added.) The respondent contends that it does not meet this definition because, while it owned the premises, it neither rented nor leased the petitioner's apartment to her. Thus, the respondent reasons, under the plain meaning of RSA 540-A:1, I, it is not a "landlord."

The petitioner raises three arguments in response. First, relying upon Texas law, the petitioner argues that she and the respondent created a new landlord/tenant relationship by implication. *See Twelve Oaks Tower I v. Premier Allergy*, 938 S.W.2d 102, 110 (Tex. App. 1996) ("parties' post-foreclosure conduct, including continued possession of the premises and payment and acceptance of rent payments with full knowledge of foreclosure, created a new lease"). Under Texas law, "[w]hen a landlord-mortgagor is foreclosed upon, the general rule is that a tenant's lease is terminated." *Aspenwood Apartment Corp. v. Coinmach, Inc.*, 349 S.W.3d 621, 631 (Tex. App. 2011), *review granted*, (Tex. 2012). When this occurs, the tenant and the purchaser at a foreclosure sale may "independently enter into a new landlord-tenant relationship." *Id.* For such a new relationship to be found to exist, "both parties must manifest consent to enter into a new lease." *Id.* A tenant's mere continuation in possession does not, without more, establish a new landlord/tenant relationship. *See id.* By contrast, a

"landlord's either demanding rent or accepting it constitutes an election to create a tenancy relationship." *Id.* at 632.

Thus, in *Twelve Oaks*, a new landlord/tenant relationship arose by implication when, after learning that the Federal Deposit Insurance Corporation (FDIC) had foreclosed upon the property, the tenant continued to occupy the premises and pay rent to the FDIC, which accepted it. *Twelve Oaks*, 938 S.W.2d at 110. In *ICM Mortgage Corp. v. Jacob*, 902 S.W.2d 527 (Tex. App. 1994), however, although the tenant "clearly manifested her desire to lease the property after foreclosure," the mortgagee, "through its repeated refusals to accept rent" from her, "revealed only unwavering disinterest in leasing the house to [her]." *Jacob*, 902 S.W.2d at 533. Although the mortgagee instructed the tenant to "sit tight" until it obtained clear title to the property, this was "insufficient as a matter of law to give rise to a new lease." *Id.* (quotation omitted).

██ In this case, the petitioner concedes that she never paid rent to the respondent and was never "specifically aware that [the respondent] owned her apartment." She was not even aware of the foreclosure until the day she was evicted. Nor is there any evidence that the respondent ever demanded that the petitioner pay rent. Although the respondent did not attempt to remove the petitioner for eight months after becoming the owner of the premises, during that entire time, the petitioner paid rent to the prior owner. Under these circumstances, assuming, without deciding, that our law is consistent with Texas law on this point, the petitioner's and respondent's post-foreclosure conduct did not evince their mutual consent to enter into a new landlord/tenant relationship, as a matter of law.

Next, the petitioner asserts that the respondent is a landlord within the meaning of RSA chapter 540-A because her tenancy at will with the prior owner predated the mortgage at issue. She entered into the informal agreement with the prior resort owner in 2003, and the prior resort owner obtained the mortgage at issue in 2006. The petitioner argues that, under these circumstances, the respondent, as the purchaser at the foreclosure sale, took the resort property subject to her tenancy at will. *See, e.g.*, RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 7.1 (1997) ("Foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed."); 55 AM. JR. 2D *Mortgages* § 595 (2009) ("The rights of a tenant in possession of real estate, under a lease given prior to the execution of a mortgage on the same premises, are not extinguished by a foreclosure of the mortgage; the purchaser at the foreclosure sale acquires no greater interest than the mortgagor had, and becomes the landlord of the lessee."). *See generally* Annotation, *Effect of Foreclosure of Mortgage as Terminating Lease*, 14 A.L.R. 664 (1921). *But*

*see Aspenwood Apartment Corp.*, 349 S.W.3d at 631 (generally, foreclosure terminates prior lease); *but cf. Molla v. Sanders*, 981 A.2d 1197, 1200-01 (D.C. 2009) (if lease with prior owner is not recorded, it "is ineffective against a subsequent bona fide purchaser," including purchaser that acquired property in foreclosure sale).

■ The petitioner, however, had only a tenancy at will with the prior owner. "A tenancy at will is an estate which simply confers a right to the possession of the premises leased for such indefinite period as both parties shall determine such possession shall continue." *Public Service Co. v. Voudomas*, 84 N.H. 387, 391 (1930) (quotation omitted). "The continuance of the tenancy at will depends upon the presence of the landlord's and tenant's wills that the tenancy continue." RESTATEMENT (SECOND) OF PROPERTY: LANDLORD & TENANT § 1.6 comment *e* at 39 (1977). Thus, for instance, when either the landlord or tenant dies, the tenancy ceases "unless the decedent's successor in interest and the other party agree otherwise." *Id.* "It is well settled law that a tenancy at will cannot be assigned or transferred." *Voudomas*, 84 N.H. at 389; *see* RESTATEMENT (SECOND) OF PROPERTY: LANDLORD & TENANT, *supra* § 15.1. This is because "[a] tenancy at will inherently exists only as long as both parties will its continuance. They are in a position to exercise this will only so long as they retain their original interests. Hence the tenancy at will can inherently exist only between the original parties." RESTATEMENT (SECOND) OF PROPERTY: LANDLORD & TENANT, *supra* § 15.1 comment *b* at 86.

■ Because it was only a tenancy at will, the petitioner's tenancy with the prior resort owner necessarily terminated upon foreclosure. As the trial court aptly concluded, at that point, the petitioner became the respondent's tenant at sufferance. A tenant at sufferance is not, however, in a landlord-tenant relationship. *See Hill v. Dobrowolski*, 125 N.H. 572, 575 (1984). As we explained in *Hill*: "A tenancy at sufferance has been described generally as an interest in land which exists when a person who had a possessory interest in land by virtue of an effective conveyance, wrongfully continues in the possession of the land after the termination of such interest . . . ." *Id.* at 574 (quotations omitted). It is not a "tenancy in fact" because there is no "privity between [the] landlord and tenant." *Id.* at 575 (quotation omitted).

■ Alternatively, the petitioner asserts that her tenancy at will was not terminated by the foreclosure because she was not joined as a party to it. *See Flushing Sav. Bank, FSB v. 509 Rogers LLC*, 928 N.Y.S.2d 618, 620 (Sup. Ct. 2011) (under New York law, because, by statute, tenants of a property are necessary parties to foreclosure action, failure to join them leaves their interests unaffected by foreclosure and sale). In making this

argument, however, the petitioner relies upon cases construing the statutory schemes of states other than New Hampshire. She has not analyzed *our* statutory scheme to demonstrate that she was a necessary party to the foreclosure action under it. Nor has she addressed New Hampshire case law on this subject. *See Snyder v. N.H. Savings Bank*, 134 N.H. 32, 37 (1991) (lessee whose lease has been recorded is entitled to notice of foreclosure sale). Under these circumstances, we consider her argument insufficiently developed for our review.

The petitioner next argues that regardless of whether the respondent is a "landlord," she is entitled to the protections of RSA chapter 540-A because her tenancy at sufferance followed the termination of her tenancy at will with the prior resort owner. *See Hill*, 125 N.H. at 575-76 (explaining that protections of RSA chapter 540-A apply only to tenancies at sufferance that have "followed the termination of a conventional leasehold relationship"); *see Voudomas*, 84 N.H. at 390 (tenancy at will is leasehold under New Hampshire law).

In *Hill*, the plaintiff and her former husband sold a home to the defendant, and the defendant allowed the plaintiff to remain in the home for two days after the passage of title pursuant to a short lease. *Hill*, 125 N.H. at 573, 576-77. When, after the second day, the plaintiff refused to leave the premises, despite the defendant's demands that she vacate it, the defendant used self-help to evict her. *Id.* at 573-74. The plaintiff sued the defendant for trespass and for violation of RSA chapter 540-A. *Id.* at 573. The defendant successfully moved to dismiss both claims, and the plaintiff appealed only the dismissal of the RSA chapter 540-A claim. *Id.*

On appeal, the defendant argued that RSA chapter 540-A did not apply to him because his relationship with the plaintiff was a tenancy at sufferance. *Id.* at 574. We disagreed, holding that when the tenancy at sufferance follows "the termination of a conventional leasehold relationship," RSA chapter 540-A applies. *Id.* at 575, 576. We explained that when the legislature enacted RSA chapter 540-A, it intended to "remove[ ] the landlord's common law right to self-help in evicting a residential tenant whose tenancy at sufferance was preceded by a different leasehold tenancy." *Id.* at 575. We observed that RSA 540-A:2 generally prohibits a residential landlord from attempting to "circumvent lawful procedures for eviction pursuant to RSA 540," and that RSA chapter 540 applies to tenancies at sufferance. *Id.*; *see AIMCO Props. v. Dziewisz*, 152 N.H. 587, 589 (2005) (holding that current version of RSA chapter 540 applies to tenancies at sufferance). "Therefore, when RSA 540-A:2 . . . forbids a residential landlord to attempt to circumvent the eviction procedures under

RSA chapter 540, it is clearly forbidding landlords to use self-help to evict tenants at sufferance." *Hill*, 125 N.H. at 575.

We also held that because of the short two-day lease, the plaintiff's tenancy at sufferance followed the termination of "a conventional leasehold relationship." *Id.* at 575, 577. Likewise, because of the two-day lease, the defendant was a "landlord" and the plaintiff was a "tenant" within the meaning of RSA chapter 540-A. *Id.* at 577.

Application of *Hill* to the instant case is problematic, however, because, although the petitioner's tenancy at sufferance followed the termination of a conventional leasehold relationship, she had the leasehold with someone *other* than the respondent. Whereas in *Hill* the plaintiff had a two-day lease with the defendant, making the defendant her "landlord" under RSA chapter 540-A, here, the petitioner was the tenant at will of the prior resort owner. She never entered into a leasehold relationship with the respondent. The question before us is whether this factual difference between *Hill* and the instant case compels us to reach a different result than we did in *Hill*. We conclude that it does.

■ We decline to hold that the respondent in this case is a "landlord" absent any evidence that it ever "rent[ed] or lease[d]" the petitioner's apartment to her, RSA 540-A:1, I, or that it could be deemed to have done so by operation of law. Contrary to the petitioner's assertions, "[t]he focus of RSA chapter 540-A . . . is to deter unacceptable landlord conduct rather than to remedy harm to tenants." *Wass v. Fuller*, 158 N.H. 280, 283 (2009) (quotation omitted). RSA 540-A:1, I, specifically defines a "landlord" as one *"who rents or leases* residential premises." (Emphasis added.) We must interpret this statute as written, according to its plain meaning. *See Malborn Realty Trust*, 164 N.H. at 67. Had the legislature intended damages actions under RSA chapter 540-A to be brought against those who do not "rent[ ] or lease[ ] residential premises," it could have so stated. *See First Fed. Bank, FSB v. Whitney Dev.*, 677 A.2d 1363, 1367-68 (Conn. 1996) (after foreclosure, mortgagee was "landlord" under statute defining "landlord" as "the owner of the dwelling unit" (quotations and ellipses omitted)). "Of course, if the legislature disagrees with our construction, it is free to amend the statute as it sees fit." *Wass*, 158 N.H. at 283. For all of the above reasons, therefore, we reverse the trial court's determination that the respondent was a "landlord" under RSA chapter 540-A.

■ The respondent argues that because it was not the petitioner's "landlord" within the meaning of RSA chapter 540-A, it was entitled to use self-help to evict her. To the contrary, a purchaser at a foreclosure sale may *not* use self-help to evict a tenant at sufferance. *See Greelish v. Wood*, 154 N.H. 521, 527 (2006); RSA 540:12 (2007) ("The owner, lessor, or purchaser

at a mortgage foreclosure sale of any tenement or real estate may recover possession thereof from a lessee, occupant, mortgagor, or other person in possession, holding it without right, after notice in writing to quit the same as herein prescribed.").

Our decision in *Greelish* is dispositive. The defendant in *Greelish* had a life estate in certain residential property. *Greelish*, 154 N.H. at 521. When the property was sold to the plaintiff at a foreclosure sale, the life estate was terminated. *Id.* Thereafter, although the plaintiff filed a landlord-tenant writ to establish his right to possession, he also engaged in conduct intended to force the defendant to leave. *Id.* at 521-22. Each party sued for damages. *Id.* at 522. The trial court found that the plaintiff's harassment of the defendant, whom the court found to be a tenant at sufferance, constituted "an attempted self-help constructive eviction." *Id.* (quotation omitted). On appeal, the plaintiff argued that he was entitled to use self-help to evict the defendant because her tenancy at sufferance, unlike the tenancy at sufferance in *Hill*, arose outside of the rental or leasehold context. *See id.* at 524.

After reviewing development of the common law and the statutory process for eviction, we disagreed. *Id.* at 524-27. We concluded both that "the statutory summary process in RSA chapter 540 was available to the plaintiff," *id.* at 527; *see* RSA 540:12, and that "the time when the public interest required the existence of self-help for a purchaser at a foreclosure sale to recover possession from a tenant at sufferance has passed." *Greelish*, 154 N.H. at 527.

The respondent argues that *Greelish* is distinguishable because the statutory summary process was not available to evict the petitioner in this case. The respondent contends that it could not use the summary process in RSA chapter 540 because the petitioner's apartment was merely a hotel "room," which was not rented for residential purposes. *See* RSA 540:1-a, I, II, IV(b) (2007) (defining restricted property as real property rented for "residential purposes" except for "[r]ooms in hotels, motels, inns, tourist homes and other dwellings rented for recreational or vacation use"). This argument is unavailing. The trial court specifically found that the petitioner was a "residential tenant" of the resort, who resided in a two-bedroom "full apartment." In light of these findings, which the respondent does not challenge and the record supports, we disagree with the respondent that the summary process under RSA chapter 540 was unavailable.

In making this argument, the respondent relies upon our decision in *Atwood v. Owens*, 142 N.H. 396 (1997), which is distinguishable from this case. The tenants in *Atwood* rented a tavern "for the purpose of operating a bed and breakfast." *Atwood*, 142 N.H. at 397 (quotation omitted). Although they happened also to live on premises, the primary purpose of

the leasehold was commercial, to run the bed and breakfast; its residential component was merely "incidental." *Id.* at 399. Under these circumstances, we held that the statute regarding security deposits for residential premises did not apply. *Id.* at 396, 399; *see* RSA 540-A:6 (2007). In the instant case, by contrast, the *sole* purpose of the petitioner's tenancy was residential. She, unlike the tenants in *Atwood,* rented only a residential unit; she did not rent the commercial property in which the residential unit was located. Accordingly, for the reasons detailed above, we uphold the trial court's determination that the respondent was not entitled to use self-help to evict the petitioner.

■ At oral argument, the parties agreed that a common law theory of recovery could apply to the facts of this case. *See Hill,* 125 N.H. at 573 (in addition to claiming statutory violation, tenant sued landlord for trespass); *Greelish,* 154 N.H. at 521-22 (purchaser at foreclosure sale sued for harassment). However, although the petition was not included in the record on appeal, the parties have represented that the petitioner alleged only a claim under RSA chapter 540-A. Having determined that the petitioner's RSA chapter 540-A claim is not viable against the respondent, we remand so that the petitioner may seek leave to amend her writ to correct this deficiency. *Cf. ERG, Inc. v. Barnes,* 137 N.H. 186, 189 (1993) (relating to pre-trial dismissal of claim).

> *Affirmed in part; reversed in part; and remanded.*

CONBOY, LYNN and BASSETT, JJ., concurred.