Strafford
No. 2011-451

THE STATE OF NEW HAMPSHIRE

v.

DAVID J. FISCHER

Argued: June 4, 2013
Opinion Issued: November 26, 2013

*Michael A. Delaney*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

CONBOY, J. The defendant, David J. Fischer, appeals his convictions, following a jury trial in Superior Court (*Brown*, J.), on two counts of second degree assault, both of which resulted in extended terms of imprisonment. *See* RSA 631:2, I(c) (2007); RSA 651:6, II(a) (Supp. 2012). He argues that: (1) the trial court erred in admitting testimony under the excited utterance hearsay exception; (2) the evidence was insufficient to prove that his conduct manifested extreme indifference to the value of human life; (3) the trial court erred in instructing the jury on extreme indifference to the value of human life; (4) the trial court violated his rights against double jeopardy by sentencing him on both second degree assault convictions; (5) the trial court erred in imposing extended terms of imprisonment; and (6) the trial court erred in failing to instruct the jury that it must unanimously find a specific bodily injury. We affirm.

The jury could have found the following facts. At 10 p.m. on February 18, 2010, the victim, the defendant's wife, returned to their home in Dover from her shift as a nurse at York Hospital. She and the defendant argued. She then removed her rings, threw them at him, and told him that she "couldn't do this any more." In response, the defendant grabbed her by the throat, pushed her head into the wall behind her with such force that it dented the wall, threw her to the floor, and left the house. When the defendant returned, the victim told him that she was not going to stay in the relationship and that she was going to obtain a restraining order the next day. The defendant responded that if she did, he would kill her.

The defendant turned off the lights in the kitchen and went upstairs. When the victim went from the living room into the kitchen and turned the lights back on, the defendant came downstairs, turned the lights off, and lunged at her. He grabbed her from behind, put his hand over her mouth, and brought her to the floor. Then he stepped on her head, preventing her from getting up. He grabbed her by the hair and sweatshirt and dragged her into the living room. The sweatshirt tightened around her neck so she could not breathe or speak. The defendant then went back upstairs. The victim spent the rest of the night on the couch, although she could not sleep.

In the morning, the defendant apologized and said that he wanted "to fix things," but the victim said that she could not stay with him. As she was leaving the house for work, the defendant charged at the door, slamming it on her finger. Rather than going to her department at York Hospital, the victim went to the emergency room. The emergency room doctor deter-

mined that her finger was fractured. Although she tried to work after leaving the emergency room, she was sent home because of her injured finger.

The victim left the hospital and telephoned a co-worker, Pamela Damrill. She also telephoned her mother's partner, Kristin Busch. She told both what had happened. She then called her brother, a Rochester police officer, who accompanied her to obtain a restraining order. The victim also reported the assaults to the Dover police. At the recommendation of the police, she went to the Wentworth-Douglass Hospital emergency room to be examined.

At the hospital, the victim told the nurse that, during the previous night, she had been assaulted by her husband, who pushed her to the floor, stepped on her, and choked her. She also said that her husband slammed her finger in the door. The nurse noted bruising on the victim's back near her right shoulder blade, tenderness on her cervical spine, tenderness on the back of her head and front of her neck, and swelling, tenderness, and bruising on her left index finger. In addition to her fractured finger, the victim was diagnosed with muscle strain in her neck, cervical strain, and abrasions and contusions on her neck, back, and head.

The defendant was indicted on three counts of second degree assault. The first charge alleged that the defendant caused serious bodily injury to the victim by slamming a door on her hand, causing her to suffer a fractured finger. The other two charges, one concerning the assault in the living room and the other concerning the assault in the kitchen, alleged that the defendant recklessly caused bodily injury to the victim under "circumstances manifesting an extreme indifference to the value of human life."

At the close of the State's case, the defendant moved to dismiss all three charges, arguing that the State had introduced insufficient evidence. The trial court denied the motion. The jury returned a not guilty verdict regarding the alleged assault that caused the victim's broken finger, but found the defendant guilty of the counts based upon the incidents in the living room and kitchen. The defendant moved to set aside the verdicts, renewing his insufficiency claim. The trial court denied the motion. This appeal followed.

The defendant first argues that the trial court erred in admitting Kristin Busch's testimony under the excited utterance exception to the hearsay rule. The admissibility of evidence is a matter left to the sound discretion of the trial court. *State v. McDonald*, 163 N.H. 115, 121 (2011). We will not reverse the trial court's decision to admit evidence absent an unsustainable exercise of discretion. *Id.* In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. *Id.*

■ The excited utterance exception to the hearsay rule permits the admission of hearsay statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." N.H. R. Ev. 803(2). "To qualify as an excited utterance, the statement must be a spontaneous verbal reaction to some startling or shocking event, made at a time when the speaker was still in a state of nervous excitement produced by that event and before she had time to contrive or misrepresent." *State v. Pepin*, 156 N.H. 269, 274 (2007) (quotation and brackets omitted).

■■ Busch testified that the victim telephoned her at around 8:45 a.m., after the victim left work. The victim was tearful, and her voice was shaky. Busch then gave a detailed narrative of her conversation with the victim, in which the victim described the assaults and said that she "was scared." When the defendant objected to Busch's testimony as inadmissible hearsay, the trial court concluded that it was admissible as an excited utterance. Previously, however, the trial court had ruled that Pamela Damrill's testimony concerning the victim's telephone call to her, which was made shortly before the call to Busch, was not an excited utterance because of the "intervening events" between the assaults and the call — the victim's drive to the emergency room for treatment for her finger and her time at work. In light of the trial court's finding that these intervening events precluded admission of Damrill's testimony as an excited utterance, it erred in admitting Busch's testimony concerning the victim's subsequent statements to her. *See id.* (noting excited utterance exception is based upon spontaneity and impulsiveness of statement).

■ The State argues that any error in admitting Busch's testimony was nevertheless harmless.

> An error is harmless if we can say beyond a reasonable doubt that it did not affect the verdict. The State bears the burden of proving that an error is harmless. The evaluation of whether the State has met its burden involves consideration of the alternative evidence presented at trial and the character of the contested evidence. An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity or weight, and if the contested evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. In making this determination, we consider the alternative evidence presented at trial as well as the character of the inadmissible evidence itself.

*State v. Rodriguez*, 164 N.H. 800, 810-11 (2013) (quotation omitted).

Here, the alternative evidence of the defendant's guilt was overwhelming. The victim provided a graphic account of the assault in the living room. She also described in detail the assault in the kitchen. The officer who interviewed the victim at the Dover police station testified that she had a mark on the left side of her neck and a bruise on the back of her shoulder. Photographs of the victim's injuries and the dent in the wall were admitted as exhibits at trial. The nurse who examined the victim at the Wentworth-Douglass Hospital emergency room testified that the victim told her that she had been assaulted by her husband on the previous night, and that during the assault she was pushed to the floor, stepped on, and choked. The nurse noted bruising on the victim's back near her shoulder blade, tenderness in her neck, tenderness on the back of her head, and swelling, tenderness, and bruising on her finger — injuries that the nurse testified were consistent with the victim's description of the assaults.

In relation to this evidence, Busch's testimony was inconsequential and cumulative. *See State v. Hernandez*, 159 N.H. 394, 403 (2009). Our review of the record establishes that Busch's recitation of her conversation with the victim was devoid of any evidence not disclosed by other witnesses. The defendant argues, however, that "Busch's testimony about [the victim's] statements prejudiced the defense by attributing to [the victim], on the day after the events, a similar description of the details of the previous night, thereby bolstering her credibility." Busch's testimony, however, was substantially the same as testimony elicited from the nurse who treated the victim at the Wentworth-Douglass Hospital. *See State v. Fischer*, 143 N.H. 311, 317 (1999) (concluding that any error in admitting victim's prior consistent statement was harmless where it was merely cumulative of testimony of physician who examined victim shortly after attack). Here, the nurse recounted the victim's description of the assaults, testifying that the victim's injuries were consistent with her description of what had happened. Consequently, the jury heard other testimony "bolstering the victim's version of the attack[s]." *Id.* Because the alternative evidence of the defendant's guilt was overwhelming and because the contested evidence was inconsequential and cumulative, we conclude that the erroneous admission of Busch's testimony as an excited utterance was harmless beyond a reasonable doubt.

██ The defendant next argues that the State introduced insufficient evidence to prove that his conduct manifested an extreme indifference to the value of human life. To prevail, the defendant must establish that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Dion*, 164 N.H. 544, 548 (2013).

Whether a defendant acted with "extreme indifference" is a question of fact for the jury. *State v. Edson*, 153 N.H. 45, 47 (2005). "We have previously determined that an attacker acts with 'extreme indifference' when he inflicts any degree of bodily injury on a victim and when the 'circumstances' of the attack demonstrate a blatant disregard for the risk to the victim's life." *State v. Fletcher*, 129 N.H. 641, 644 (1987) (quotation omitted). The injuries, however, need not themselves be life-threatening. *State v. Bailey*, 127 N.H. 416, 423 (1985).

■ We conclude that, as to both assaults, there was sufficient evidence that the defendant caused bodily injury to the victim under circumstances manifesting an extreme indifference to the value of human life. The circumstances of these assaults, as testified to at trial, support a finding that the defendant's conduct manifested extreme indifference to the value of human life, particularly since the jury could have concluded that the course of the defendant's conduct, if continued, could have caused the victim's death. *See Fletcher*, 129 N.H. at 644. We therefore conclude that a rational juror, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt.

■ The defendant next asserts that the trial court erred in its instructions defining the element of extreme indifference to the value of human life. "When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case." *State v. Furgal*, 164 N.H. 430, 434 (2012) (quotation omitted). The scope and wording of jury instructions are within the sound discretion of the trial court, and we review the trial court's decision for an unsustainable exercise of discretion. *State v. Etienne*, 163 N.H. 57, 70 (2011). "To show that the trial court's decision is not sustainable, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted).

■ A person is guilty of second degree assault if he "[r]ecklessly causes bodily injury to another under circumstances manifesting extreme indifference to the value of human life." RSA 631:2, I(c). Citing *State v. Schultz*, 141 N.H. 101, 105 (1996), a second degree murder case, the defendant proposed the following jury instruction:

> [P]roof of extreme indifference to the value of human life requires more than a demonstration that Defendant had created and disregarded a substantial risk of death. "Extreme indifference to

the value of human life" requires proof beyond a reasonable doubt of a "blatant disregard" of a substantial and [un]justifiable risk of death.

The State objected, asserting that the definition of "recklessly" given by the trial court contained the "substantial and unjustifiable risk" language and, therefore, that it did not need to be repeated in the definition of "extreme indifference to the value of human life." The trial court agreed, noting that it was "sticking to the standard instructions throughout the entire instruction format."

The trial court instructed the jury that the State was required to prove beyond a reasonable doubt that the defendant acted recklessly — that he "was aware of a substantial and unjustifiable risk," that he "consciously disregarded the risk," and that his disregard of the risk "was a gross deviation from what the law-abiding person would have done." The court also explained that the risk had to be "to the [victim's] life." Regarding "extreme indifference to the value of human life," the trial court defined the term as meaning that "the [d]efendant's acts demonstrate a blatant disregard for the risk to the [victim's] life. It's not necessary the injury — or a series of injuries themselves be life-threatening."

We find no error in the trial court's instructions. Here, the jury instructions mirrored the language that we have approved regarding the requirements for second degree assault. *See, e.g., Fletcher*, 129 N.H. at 644 (stating that "attacker acts with 'extreme indifference' when he inflicts any degree of bodily injury on a victim and when the 'circumstances' of the attack demonstrate a blatant disregard for the risk to the victim's life" (quotation omitted)); *Bailey*, 127 N.H. at 424 (explaining "extreme indifference" requires proof of "a blatant disregard" for the risk to human life (quotation omitted)).

We disagree with the defendant's assertion that the jury instructions failed to convey that "an essential aspect of the meaning of the extreme indifference element" is "the requirement that the defendant must have created and disregarded a substantial risk of death." The court correctly instructed the jury that to find guilt, it must find that the defendant "was aware of a substantial and unjustifiable risk" and that the risk had to be "to the [victim's] life."

██ Moreover, "[t]he trial court is not required to use the specific language requested by the defendant. Rather, the purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." *Furgal*, 164 N.H. at 434 (quotation omitted). The jury instructions fairly covered the issues of law in

the case, and, therefore, we find no unsustainable exercise of discretion. *See Etienne*, 163 N.H. at 70; *see also Bailey*, 127 N.H. at 424.

The defendant next argues that the trial court violated his right against double jeopardy by sentencing him on both convictions for second degree assault because each conviction was based upon an indictment alleging the same bodily injury — "contusions and muscle strain to [the victim's] head and neck." The State counters that the defendant's sentences did not violate his right against double jeopardy because each indictment required evidence of a distinct series of assaults. Because the issue of double jeopardy presents a question of constitutional law, our review is *de novo*. *State v. McGurk*, 157 N.H. 765, 773 (2008).

Part I, Article 16 of the New Hampshire Constitution and the Fifth and Fourteenth Amendments to the United States Constitution protect a defendant from being punished twice for the same offense. N.H. CONST. pt. I, art. 16; U.S. CONST. amends. V, XIV. We first address the issue under the State Constitution and rely upon federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

██ ██ For the purpose of double jeopardy analysis, two charged offenses cannot be regarded as the same offense if they do not arise out of the "same act or transaction." *See Blockburger v. United States*, 284 U.S. 299, 304 (1932); *State v. Matey*, 153 N.H. 263, 270 (2006); *see also State v. Hull*, 149 N.H. 706, 717 (2003). Here, the defendant was charged with two separate incidents of assault — the first took place in the living room and, sometime thereafter, the second occurred in the kitchen. That each assault resulted in injuries to the victim's head and neck does not establish that they arose out of the same act or transaction. We therefore conclude that the defendant was not subjected to multiple punishments for the same offense and, consequently, that his right against double jeopardy under the State Constitution was not infringed. The Federal Constitution provides no greater protection than the State Constitution in this area. *See Blockburger*, 284 U.S. at 304; *McGurk*, 157 N.H. at 774. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

The defendant next argues that the trial court erred in imposing extended terms of imprisonment because RSA 651:6, II(a), which authorizes extended terms of imprisonment in certain circumstances, does not apply. Alternatively, he asserts that the statute is unconstitutionally vague. The State contends that the extended terms were properly imposed because the defendant had twice previously been imprisoned on sentences of a year or more that arose from separate criminal episodes and that the extended term statute is not unconstitutionally vague.

██ Prior to 2003, a trial judge was authorized to impose an extended term of imprisonment if the judge found that the defendant had "twice previously been *imprisoned* . . . on sentences in excess of one year." RSA 651:6, I(c) (Supp. 2002) (emphasis added). In an effort to comply with the United States Supreme Court's opinion in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the legislature amended the statute to permit imposition of an extended term where the defendant had "twice previously been *convicted* . . . on sentences in excess of one year." RSA 651:6, II(a) (emphasis added); *see State v. Dansereau*, 157 N.H. 596, 599-600 (2008). The change in the statute does not improve its clarity; "[d]espite the change from 'imprisoned' to 'convicted,' as it stands today, the statute still requires a trial court to find, before it imposes an extended term of incarceration, that the defendant (1) was previously *imprisoned* twice, resulting from (2) sentences in excess of one year." *State v. Matton*, 163 N.H. 411, 414 (2012) (citation omitted).

The defendant contends that the statute requires either "two prior non-continuous periods of imprisonment" or an "extension of one continuous period of incarceration" that "arises out of an offense committed after the defendant's first sentencing." Resolution of this issue requires that we interpret the language of RSA 651:6, II(a). In matters of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of the statute considered as a whole. *Evans v. J Four Realty*, 164 N.H. 570, 572 (2013). When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We construe the Criminal Code "according to the fair import of [its] terms and to promote justice." RSA 625:3 (2007); *see State v. Martin*, 164 N.H. 687, 689 (2013).

██ The wording of the statute, as we have interpreted it, does not support the defendant's contention. To "imprison" means "[t]o confine (a person) in prison." BLACK'S LAW DICTIONARY 825 (9th ed. 2009). A "sentence" is "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer." *Id.* at 1485. Here, although the defendant's prior convictions resulted in one uninterrupted period of incarceration, he nevertheless was twice previously imprisoned on sentences in excess of one year for purposes of the statute. *See* RSA 651:6, II(a).

In 1996, the defendant was charged with first degree assault and witness tampering. While he was incarcerated, awaiting trial on those charges, he was charged with two further acts of witness tampering. He was subse-

quently convicted of both sets of charges. In November 1996, the defendant was sentenced on the assault conviction to imprisonment of seven and one-half to fifteen years, stand committed. On the accompanying witness-tampering conviction, he was sentenced to imprisonment of three and one-half to seven years, stand committed, with two and one-half years suspended, to run consecutively to the sentence on the assault conviction. Thus, as to this set of two convictions, which the trial court found to be the result of one criminal episode, the defendant was "imprisoned on a sentence in excess of one year." In December 1997, the defendant was sentenced on each of the two subsequent witness-tampering convictions to imprisonment of three and one-half to seven years, stand committed, with two and one-half years suspended, to be served concurrently with each other and with the sentences he was already serving. Thus, as to this set of two convictions, he was also "imprisoned on a sentence in excess of one year." Contrary to the defendant's arguments, the statute's requirements are met even though the second set of sentences of imprisonment ran concurrently with the first set. We note that, because the State does not contest the trial court's characterization of each set of two sentences as constituting one sentence of imprisonment for purposes of sentence enhancement, we need not determine whether each of the four prison sentences could have been properly "counted" in the enhanced-sentencing calculus. We, therefore, conclude that the trial court did not err in its determination that "the threshold two convictions [were] satisfied by the sentence served from the consolidated assault and first witness tampering when added to the second 'conviction' from the latter two witness tamperings."

We likewise reject the defendant's arguments, based upon *Dansereau*, that we must apply the rule of lenity to resolve in his favor what he alleges to be ambiguity in the statute and that, because the statute is unconstitutionally vague, it should not have been applied. Although we applied the rule of lenity in *Dansereau*, we did so because the defendant in that case had been twice "convicted," but had not been twice "imprisoned" because one of the underlying convictions resulted in a suspended sentence. *Dansereau*, 157 N.H. at 597. In that circumstance, we concluded that the statute was ambiguous and that review of the legislative history did not resolve the ambiguity. *Id.* at 599-603. We have subsequently held, however, that when a defendant has been twice previously "imprisoned," rather than merely "convicted," the statutory requirements for an extended term of imprisonment are satisfied. *See State v. Russo*, 164 N.H. 585, 597 (2013); *Matton*, 163 N.H. at 414. Consequently, we find unavailing the defendant's argument that the statute is unconstitutionally vague.

The defendant finally argues that the trial court committed plain error by failing to instruct the jury that, in order to convict him, it had to unanimously agree on a specific bodily injury caused by his conduct. Under the plain error rule, we may consider errors not raised before the trial court. *State v. Guay*, 164 N.H. 696, 703 (2013). For us to find plain error: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 704.

 Relying upon *State v. Greene*, 137 N.H. 126 (1993), the defendant maintains that the error in failing to so instruct the jury was plain. In *Greene*, following a question from the jury during deliberations, the trial court erroneously instructed the jury that it need not unanimously find any one of the three acts of unprivileged physical contact alleged in the complaint. *Greene*, 137 N.H. at 128, 131. In *Greene*, however, the defendant was charged with misdemeanor simple assault on a police officer in that she "punch[ed] [him] in the face with her fist *and* in the torso with her fist *and* did further kick him about the body." *Id.* at 127 (quotation omitted and emphases added). In that case, the *element* of unprivileged contact was alleged to be three separate blows. *Id.* at 129. Here, in contrast, the indictments charged the defendant with recklessly causing "bodily injury" to the victim in that he *caused* "contusions and muscle strain to [the victim's] head and neck." Thus, the jury was required to find that the defendant recklessly caused "bodily injury" to the victim. The defendant does not cite, nor could we find, a case in which a court has held that a jury must be unanimous as to which alleged injury was caused by an assault. We therefore conclude that any error in failing to instruct the jury that it had to unanimously agree on a specific bodily injury caused by the defendant's conduct was not plain.

*Affirmed.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.