# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2024-0186, <u>Adrien Auclair v. Colton Harvey & a.</u>, the court on July 22, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The defendants, Colton Harvey and Benjamin Harvey (Harveys), appeal, and the plaintiff, Adrien Auclair, cross-appeals, orders from the Circuit Court (<u>Gardner</u>, J.) determining that the Harveys violated RSA 540-A:3, I (2021) by willfully interrupting Auclair's utility services. On appeal, the Harveys contend, <u>inter alia</u>, that the trial court erred in determining that they were landlords and Auclair was a tenant. We agree, and accordingly, reverse.

The trial court found, or the record supports, the following facts. The Harveys are the sons of Jennifer Levasseur, and Auclair is her stepfather. In the past, they all had a close relationship and lived near each other. In February 2022, Auclair sold his house in Rollinsford to the Harveys. Based upon concerns about Auclair's ability to live alone, the parties entered into a familial arrangement to share the home such that Benjamin agreed to live with Auclair in the residence, and Auclair agreed to pay a portion of the Harveys' mortgage. Levasseur handled Auclair's mortgage payments from a joint checking account that she shared with him. Benjamin and Auclair lived together for a period of time until Auclair became verbally abusive to Benjamin to the point that Benjamin decided to move out.

After he moved out, Auclair forwarded the cable and Wi-Fi bill for the residence to Benjamin. Eventually, Benjamin entered the residence, disconnected and removed the Wi-Fi router and cable box, and returned the equipment to the cable provider. In response, Auclair filed a tenant's petition under RSA 540-A:4, alleging that he was a tenant, the Harveys were his landlords, and they unlawfully removed his internet and television access without prior court permission on May 8, 2023.[1] The next day, the Circuit Court (<u>Lown</u>, J.) entered a temporary order requiring the Harveys to immediately restore "all utility services as provided by the tenant's rental agreement with the landlord" and restraining the Harveys from entering the leased premises without Auclair's permission or consent or a prior court order.

---

[1] In a separate action, Auclair claims that he has a life estate in the residence. That action was pending as of oral argument.

On August 23, Levasseur installed a new Wi-Fi router and cable box at the residence.

The trial court held an evidentiary hearing over four days from June 6 to December 11, 2023. The Circuit Court (Gardner, J.) ruled that the Harveys violated RSA 540-A:3, I, by entering the residence, disconnecting the Wi-Fi router and cable box, and returning the equipment to the cable provider. The court then awarded Auclair $1,000 in damages plus attorney's fees. The trial court also ordered the Harveys to restore the cable and Wi-Fi services. Auclair moved to reconsider, arguing, inter alia, that the court's damage award should have included $1,000 for each of the 105 days that he was denied cable and Wi-Fi services. The Harveys objected. The trial court reconsidered certain aspects of its order and ultimately ordered the Harveys to pay Auclair $105,000 for the continuing violation in addition to the initial $1,000 award for damages. The Harveys appealed, and Auclair cross-appealed.

"We review the trial court's legal rulings de novo, but defer to its findings of fact if supported by the record." Evans v. J Four Realty, 164 N.H. 570, 572 (2013) (quotation omitted). Both parties agree that this case hinges upon whether the Harveys were landlords and whether Auclair was a tenant pursuant to RSA chapter 540-A. To resolve this issue, we must interpret the pertinent statutory provisions. When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. Id. We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We also interpret a statute in the context of the overall statutory scheme and not in isolation. Id.

RSA chapter 540-A "regulates the relationship between landlords and tenants of residential premises." Anderson v. Robitaille, 172 N.H. 20, 23 (2019) (quotations omitted). It defines a landlord as one who "rents or leases residential premises," and a tenant as one "to whom a landlord rents or leases residential premises." RSA 540-A:1, I, II (Supp. 2024).[2] A lease is a form of contract, governed by the standard rules of contract interpretation. Tulley v. Sheldon, 159 N.H. 269, 272 (2009). As with any contract, the formation of an enforceable lease agreement requires a meeting of the minds as to all of the essential terms of the lease. See Syncom Indus. v. Wood, 155 N.H. 73, 82 (2007). A meeting of the minds occurs when the parties assent to the same terms. Id. Whether the parties assented to the same essential terms of the lease is a question of fact to be analyzed under an objective standard. See id.

---

[2] Although the definition of "tenant" has been amended, compare RSA 540-A:1, II (2021), with RSA 540-A:1, II (Supp. 2024), RSA 540-A:1 (2021) is applicable here because this is the version of the statute that was in effect at the time that the Harveys disconnected the utility services.

Here, the record fails to objectively support the conclusion that the parties came to a meeting of the minds or that they assented to the same essential terms of any agreement. First, the Harveys were not landlords under RSA chapter 540-A. They did not receive rent from Auclair and no written rental or lease agreement between the parties existed. Rather, Benjamin moved in with Auclair to care for him due to concerns about Auclair's ability to live alone. Although Auclair agreed to pay a portion of the Harveys' mortgage, the evidence does not specify if they agreed to a specific amount or what consideration may have attached to these payments. The parties further dispute whether they reached an agreement as to how long Auclair would be permitted to occupy the residence. Overall, the evidence rebuts the proposition that the Harveys were landlords because they did not rent or lease the residence to Auclair.

Second, Auclair was not a tenant under RSA chapter 540-A. Auclair lived with Benjamin based upon an informal family arrangement to share the residence. That arrangement continued until Auclair became verbally abusive to Benjamin. After Benjamin moved out, Auclair continued to live there alone without any formal rental or lease agreement and without making rental payments to the Harveys. Thus, the conduct of the parties demonstrated that they lacked the requisite meeting of the minds necessary to create a landlord-tenant relationship. Under these circumstances, we cannot conclude that Auclair was a tenant.

Nevertheless, Auclair asserts that the Harveys admitted that they were landlords and he was a tenant in several motions in which the Harveys referred to themselves as landlords and Auclair as a tenant. In the Harveys' objection to Auclair's motion for contempt, they stated that the mortgage payments constituted rent. In its March 2024 order on the motion for reconsideration, the trial court explained that the parties entered into a "family arrangement" under which Auclair lived in the residence with Benjamin, but that "a tenancy was created as asserted by the plaintiff" based upon "the defendants vacating the home . . . and the eviction action commenced by the defendants."

Filing an eviction notice does not automatically create a tenancy because eviction notices can be served upon occupants of a residence who are not tenants. See RSA 540:12. We have concluded that a recipient of an eviction notice was an occupant, rather than a tenant under RSA chapter 540-A. See Colburn v. Saykaly, 173 N.H. 162, 163-64, 166-67 (2020). In Colburn v. Saykaly, 173 N.H. 162 (2020), we did not conclude that filing an eviction notice against that occupant created a tenancy, because "RSA chapter 540, the chapter governing residential evictions in New Hampshire, expressly provides that possession may be recovered 'from a lessee, occupant, mortgagor, or other person in possession.'" Id. Similarly, here, filing an eviction notice against Auclair did not create a tenancy, nor imply that one existed.

3

We further note that the eviction notice was filed on a standard, statutorily prescribed form, which denotes the parties as either landlord or tenant.  See RSA 540:3 (Supp. 2024).  Relying upon the fixed terms of a standard, statutorily prescribed form does not demonstrate that a landlord-tenant relationship existed.  To conclude otherwise would elevate form over substance.  See In re Morrison Estate, 106 N.H. 388, 390 (1965) (declining to adopt a description that would "exalt form over substance").  For similar reasons, the use of the terms landlord and tenant in other filings does not demonstrate that the parties maintained a landlord-tenant relationship.  Instead, using those terms was consistent with the standard terms from the resulting action.  In addition, filing an eviction notice also does not prevent the Harveys from denying the existence of a landlord-tenant relationship.  See Robinson v. Morgan, 58 N.H. 412, 412-13 (1878) (concluding that a real property owner was not estopped from denying the existence of such a relationship despite bringing a landlord action).  In sum, we conclude that the Harveys' filing the eviction notice did not create or substantiate a finding of a tenancy, and the trial court's conclusion that it did was error.

Accordingly, we conclude that the trial court erred in determining that a landlord-tenant relationship existed between the Harveys and Auclair.  See Evans, 164 N.H. at 576 (reversing trial court's determination that owner of property was a landlord because no evidence demonstrated that owner ever rented or leased the occupant's apartment to her or that owner could have been determined to do so by law).

Given our conclusion, we need not reach any additional issues raised in the Harveys' appeal or Auclair's cross-appeal.  See Antosz v. Allain, 163 N.H. 298, 302 (2012) (declining to address other arguments where a conclusion on one issue is dispositive).  For the foregoing reasons, we conclude that the parties did not have a landlord-tenant relationship.  Accordingly, we reverse.

Reversed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**

4